IN THE

# SUPREME COURT

OF

# OREGON.

Argued 17 October; decided 5 November, 1900.

## ROSTEIN *v.* PARK.

[62 Pac. 529.]

SETTING ASIDE DEED — EVIDENCE.

1. The plaintiff and her husband testified in a suit to set aside a conveyance that the deed was not read to them before they signed it, and that they did not know its contents. There were several persons present when the deed was executed, none of whom corroborated the plaintiff, and most of whom testified that the deed was read. *Held*, sufficient to show that the deed was read to plaintiff and her husband before it was executed by them.

EVIDENCE OF DURESS.

2. Defendant exchanged lands with plaintiff's husband, and conveyed his land to plaintiff at the request of the husband. Defendant afterwards learned that plaintiff's husband had no title to the land conveyed, and demanded that his land be reconveyed to him. Plaintiff and her husband met defendant at an attorney's office, and she refused to reconvey the property; and the defendant's attorney, who was also a justice of the peace, intimated that she would be sent to the penitentiary if she refused to sign it, and she was urged by her husband to do so. She then left the office and consulted an attorney, who informed her that she could not be arrested; and she then returned to the other office, and defendant's attorney commenced to write, and told her she would be arrested when the instrument was finished, but it was not shown that she knew what he was writing. Plaintiff and her husband testified that they wished to consult another attorney, but that defendant and his attorney would not permit them to leave the office, but a disinterested witness testified that she left the office a second time. *Held*, not sufficient to show that the wife was induced to sign the deed by duress.

SETTING ASIDE CONVEYANCE — INNOCENT PURCHASER.

3. A husband exchanged land for which he had no title with A, and had the conveyance for the land received in exchange made to his wife. The wife testified that she paid A $850 for the land, which he then paid to her husband for the land conveyed by the latter. Her testimony and that of her husband were in conflict as to the manner of payment. A testified that he never paid the husband any sum for the land, and the attorney who executed the conveyance testified that no sum was paid therefor. *Held*, not sufficient to show that the wife was an innocent purchaser for value, which would authorize her to maintain a suit to set aside a conveyance of the land made by her to A on the grounds of duress.

From Lane: J. C. FULLERTON, Judge.

Suit by Fredericka Rostein against Jacob R. Park to set aside a conveyance of real estate.

It is alleged in the complaint, in substance, that on March 6, 1897, plaintiff was the owner in fee of the S. ½ of the S. ½ of section 20 in township 18 S., of range 3 W., and also that part of the SW. ¼ of section 21 in said township and range lying west of a county road laid out thereon, in Lane County, Oregon; that on said day the defendant demanded of her a deed to said premises, and, upon her refusal to comply therewith, he and his attorney, for the purpose of compelling her against her will to execute said deed, induced her and her husband to go to said attorney's office, where they falsely accused her of swindling the defendant and of violating the criminal statutes of the state; that she expressed a desire to consult an attorney, but they refused to permit her to do so, and demanded that she immediately execute said deed, and, upon again refusing to yield to the demand, defendant's said attorney, who was then a justice of the peace, fraudulently pretending to be writing a criminal information against her, informed her that unless she signed said deed she would be immediately arrested as a swindler, which threat so worked upon her fears, caused her such mental anguish, and placed her in such a state of terror of personal harm, that she was compelled to, and did, sign said deed against her will; that it

was not read to her, and she did not know the contents thereof until she saw the same of record in said county; that she never acknowledged that she executed said deed freely or voluntarily, and that the certificate of defendant's said attorney to that effect attached to said deed is false and fraudulent. The defendant having denied the material allegations of the complaint, the cause was referred; and from the testimony taken and reported by the referee the court found, in effect, that the language used by defendant's said attorney could have been, and probably was, construed by plaintiff as a threat that she would be prosecuted in a criminal action if she persisted in her refusal to execute said deed, which was decreed canceled, and defendant appeals.        REVERSED.

For appellant there was a brief and an oral argument by *Messrs. A. E. Wheeler* and *E. R. Skipworth.*

For respondent there was a brief and an oral argument by *Messrs. J. M. Williams* and *E. O. Potter.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion.

1. The evidence shows that on February 5, 1897, the defendant was the owner in fee of the real property described in the complaint, but having agreed with L. Rostein, plaintiff's husband, to exchange said premises for the NE. ¼ of the NW. ¼ of section 25 in township 10 N., of range 10 E., in Eldorado County, California, which the latter represented that he owned in fee, he and his wife executed a warranty deed thereof to the defendant, who, at Rostein's request, executed a deed for said land in Lane County to the plaintiff. The defendant on March 6, 1897, having procured an abstract showing that said land in California was then a part of the public domain, and that Rostein on December 16, 1893, secured a deed purporting to convey an undivided one-half

interest in a placer claim located thereon, but that by reason of his failure to improve the premises they were on December 3, 1895, relocated as a placer mine by other parties, who had performed the necessary assessment work to hold the claim for their own use, he (the said defendant) informed Rostein of the condition of the title to said land, tendered to him a quitclaim deed thereof, and demanded a deed of the premises which he conveyed to the plaintiff. Rostein, on being informed that at the time his deed was executed he had no title to the land in California, replied that if such were the case he and his wife would adjust the matter that afternoon, remarking that she would probably object to executing a deed to the Lane County land. Soon thereafter he called at the office of M. O. Wilkins, an attorney at law, who had prepared the deed upon the original exchange of lands, told him of the information he had received respecting the title to the land in California, and notified him that his wife would call that day to consult him in reference to the matter; and about 1 o'clock that afternoon he and his wife called at Wilkins' office and submitted some deeds to him for inspection, and asked his advice concerning the land transaction, and after they had been conversing with Wilkins about an hour respecting the matter, the defendant and A. E. Wheeler, his attorney, went into Wilkins' office, and left said abstract with him for examination, together with the correspondence in reference thereto, and it was agreed that Rostein and his wife would meet the defendant at Wheeler's office, to which they and Wilkins repaired in about one-half an hour.

Rostein, upon being requested so to do, desired to give the deed, and he and Wilkins urged Mrs. Rostein to join in the execution thereof; but, after considerable debate upon the subject, she having declined to execute the deed, Wheeler admits that he said to her: "Mrs. Rostein, do just exactly as you are a mind to about signing that deed, but, if you don't sign it, it shows that you intend to swindle Mr. Park

out of his farm; and, if that is your intention, you will have
to take the consequence, both civilly and criminally, and, if it
lands you in the penitentiary, I can't help it.   You can't beat
a man out of his farm in any such style as that in the State
of Oregon."   In response to this remark she said that she
desired to consult another attorney, whereupon she called
upon J. M. Williams, an attorney at law having an office in
the same building, to whom she stated that Wheeler had
threatened to have her arrested unless she executed a deed to
the defendant.   Williams, not having sufficient information
upon which to base an opinion respecting the title to the
lands in California, advised her not to execute the deed at
that time, telling her (so he admitted at the argument of the
cause in this court) that she could not be arrested for the
part she had taken in having the defendant's deed executed
to her.   Soon after she entered Williams' office, her husband
and Wilkins joined her, and tried to persuade her to execute
the deed, and in about one-half an hour she returned with
them to Wheeler's office, where, after parleying about the
matter, and declining for about another half hour to comply
with their request, Wheeler, who was a justice of the peace,
wrote on a sheet of paper the following: "In the City Re-
corder's Court of the City of Eugene, in the County of Lane
and State of Oregon.   State of Oregon,"—and said to plain-
tiff, "As soon as this is finished, I shall have you arrested."
In a few minutes thereafter she and her husband signed the
deed, accepted the defendant's quitclaim deed to Rostein for
the California land, and there was repaid to her at the time
the price of some goats which she purchased from the de-
fendant, the sum of $64; the defendant retaining from the
original purchase price $3 for one-half of the cost of the
abstract, and Wilkins keeping $5 as his counsel fee.   After
the deed had been signed the plaintiff was asked by the de-
fendant's attorney, who was then a notary public, if she ac-
knowledged that she executed the same freely and voluntarily

for the uses and purposes therein named, to which she at first made no reply, but attempted to take from a table the money which had been placed there for her on account of the purchase of the goats; but, being told that she must not take the money unless she acknowledged the execution of the deed, she replied: "I have signed it. That is enough." She was informed that signing only was not sufficient, and, the question being repeated, she answered, "Yes," and took $60 of the money lying on the table. The plaintiff and her husband testify that the deed was never read to them, and that they did not know the contents thereof at the time they signed it. Their testimony in this respect is contradicted by that of nearly every person in Wheeler's office at the time who remembered the circumstance, and, not being corroborated by the testimony of any witness, we are satisfied the deed was read to them, and that they knew the contents thereof.

2. Duress by threats of imprisonment must be such as to excite in the mind of the person who claims that his act was unlawfully superinduced thereby a reasonable fear of immediate imprisonment: *Buchanan* v. *Sahlein,* 9 Mo. App. 552. Tested by this rule, we do not think the plaintiff's mind was influenced to such an extent by Wheeler's threat of immediate imprisonment as to deprive her of the free exercise of her will power, thereby compelling her, through fear superinduced by such threats, to execute the deed, I. L. Simpson, plaintiff's witness, who was in Williams' office when she informed him that Wheeler threatened to have her arrested, testifies that his understanding is that Williams advised her not to sign the deed. True, Wheeler pretended to be writing a criminal information, and stated that she would be arrested as soon as it was finished, and she knew he was a justice of the peace; yet the testimony does not disclose that she was aware of what he was writing, which, if intended as an information against her, was not entitled in his court.

The plaintiff having been advised not to make the deed, and informed by an attorney at law whom she consulted on the subject that she could not be arrested because of her refusal to do so, we think she executed the deed at the earnest solicitations of her husband, who, from the time he was informed that no title to the California land passed by his deed, tried to persuade his wife to reconvey the Lane County land to the defendant, and that it was in pursuance of such entreaty on her husband's part that she complied with his request, and not in consequence of any threat made by Wheeler.

It is alleged in the complaint, and the plaintiff testifies, that, notwithstanding she notified the defendant and Wheeler that she desired to consult another attorney concerning the said land transactions, they would not permit her to do so. Her husband corroborates this testimony, and also says that, when they returned to Wheeler's office, Wilkins closed the door thereof, and that he and Wheeler each said to his wife, "You are not going out of this office until you sign that deed." The defendant and his witnesses deny these statements; and the fact that plaintiff called upon Williams, to consult with him, after Wheeler told her that, if she did not sign the deed, she would have to submit to the consequences thereof, civilly and criminally, conclusively shows that the plaintiff and her husband are mistaken in this particular. Mr. Simpson, who appears to be entirely disinterested, testifies that, after plaintiff and her husband left Williams' office, Mr. Williams immediately went out, leaving him alone therein, and in a short time Mrs. Rostein returned and conversed with him in Williams' absence, thus establishing, as far as possible from the testimony of witnesses, the falsity of Rostein's testimony that Wilkins closed the door of Wheeler's office, so as to prevent plaintiff's exit therefrom. A careful examination of the testimony leads us to conclude that the deed in question was not executed in consequence of

any duress, and that it is sufficient to convey the legal title of the premises therein described to the defendant.

3. There is another feature of the case which, in our judgment, is also controlling. The testimony shows that prior to and at the time of executing the deed in question the plaintiff was very much excited; but whether her mental disturbance was attributable to the threat of immediate arrest, or resulted from an apprehension of losing the real property demanded, may well be questioned. Her objection to executing the deed was based upon the claim that she could not afford to lose so much money, in speaking of which she testifies that on February 5, 1897, when the defendant delivered to her his deed, she paid him, in Wilkins' office, in gold coin, for the land conveyed, $850, which sum he immediately paid to her husband in consideration for the California land. On cross-examination, in referring to the manner of making such payment to the defendant, she was asked: "You had the gold coin right there, and counted it out to him?"—to which she replied: "Yes, sir; I did." Two days thereafter, however, on further cross-examination, she seems to have forgotten her previous testimony, for, on being asked, "Was the money wrapped up, or was it open?" she answered: "No; it was open,—the consideration that was in the deed (that is, the sum of $50). The rest was in $400 rolls, and Mr. Rostein opened the rolls and counted the money. Mr. Park shoved the money to him and said, 'Mr. Rostein, the money is yours,' and Mr. Rostein opened it and counted it over." Rostein, in speaking of the method of making the alleged payment to the defendant, testifies as follows: "After the agreement was made, he bargained with me and bought, and I gave him a deed, and he paid me, with the understanding what we made out before,—that $50 was to be the consideration; and the balance of $800 was rolled up in paper, and Mrs. Rostein placed it on the side of the machine (typewriter) ; and when he received a deed he pushed the money

over and said, 'Mr. Rostein, the money is yours, and the consideration.' And I took it and opened it,—looked it over carefully. It was correct, satisfactory. And then we went out." It will thus be seen that Mrs. Rostein contradicts her first statement that she counted out the money to the defendant, and that she is also contradicted by her husband's testimony in this respect, which, if it is to be believed, shows that, if any rolls of money were in evidence on that occasion, the defendant never knew the amount thereof. The defendant testifies that he never paid Rostein any sum for this land, and he is corroborated in this respect by Wilkins, who testifies that the only money that he heard spoken of or saw when the deeds were originally executed was the sum of $72, which was paid to the defendant for the goats which he sold to the plaintiff. Mrs. Rostein's contradictory statement respecting the manner of counting the money convinces us that she never paid any sum whatever to Park for his land, and that her testimony upon that subject was manufactured for the purpose of making it appear that she was an innocent purchaser for a valuable consideration, and without notice of the fraud which her husband was perpetrating upon the defendant. In *McClair* v. *Wilson,* 18 Colo. 82 (31 Pac. 502), Mr. Justice ELLIOTT, in speaking of contracts which will be set aside on account of duress, says: "In most, if not all, of the reported cases where a party has been relieved from liability on a contract on the ground that the same was obtained from him by duress, or threats amounting to duress, it will be found that the duress or threats were not only unlawful, but that the contract thus obtained was essentially unjust towards the party seeking relief from it." Notwithstanding, we cannot give our assent to a practice which will permit a person who has been defrauded by the false representations or misconduct of another to enforce redress for the injury sustained or the wrong imposed without the interposition of a court, there is apparent justice in the rule announced in the

language quoted, which may be appropriately applied herein, because the contract thus secured by the defendant was not in any respect unjust towards plaintiff, who, by reason of her participation in her husband's fraud, does not come into a court of equity with clean hands. These considerations compel us to reverse the decree and to dismiss the complaint.

REVERSED.