Argued 10 September; decided 12 November, 1900.

**KESTER v. KESTER.**

[62 Pac. 635.]

DURESS — EVIDENCE OF THREATS.

1. In a suit to reinstate an instrument that it was alleged had been mutilated under the influence of threats of personal injury, it is competent to show threats both before and after the mutilation, to determine whether plaintiff had reason to be influenced or to expect personal violence.

HUSBAND AND WIFE — THREATS.

2. A statement by a husband to his wife that she ought to have her throat cut, and a threat that unless she should destroy a certain paper he would heap coals of fire on her head as long as she lived, will be construed merely as a threat to annoy her, in view of the general conduct of the parties, and the statement that she ought to have her throat cut did not amount to a threat.

From Linn: GEO. H. BURNETT, Judge.

This is a suit by Emma S. Kester, a married woman, against her husband, James Kester, and his brother-in-law, John Denney, to reinstate a promissory note from which she had torn the latter's signature, and to recover the amount due thereon. It is alleged in the complaint, in effect, that on September 5, 1892, the defendants executed to plaintiff their promissory note for $500, payable September 8, 1893, no part of which has ever been paid; that the defendants entered into a conspiracy to compel her to mutilate said note, so that her husband, by placing his property beyond the reach of his

creditors, might defraud and abandon her, and in pursuance of such unlawful agreement he threatened her that unless she took said name from the note he would desert her, do her great bodily injury, and heap coals of fire on her head as long as she lived; and that, actuated by these threats, and fearing that he would execute them, she complied with his demand, whereupon he, without any consideration therefor, transferred all his property to said brother-in-law, abandoned her, and is living with him. The defendants, having denied the material allegations of the complaint, aver, in substance, that Kester, complying with his wife's desire to live apart from him, and to secure a share of his property, paid her the sum of $1,000, and executed said note in pursuance of their agreement that she should obtain a decree of divorce; that thereafter they renewed their marital relations under an argeement, by the terms of which they jointly purchased a farm, and he delivered to her stock and implements of greater value than the sum stated in the note, which she accepted in full settlement thereof. The reply having put in issue the allegations of new matter in the answer, a trial was had, resulting in a decree dismissing the suit, and plaintiff appeals.

AFFIRMED.

For appellants there was an oral argument by *Mr. James K. Weatherford,* with a brief over the names of *A. D. Leeds* and *Weatherford & Wyatt* to this effect:

Duress exists when one is induced by threats of another to make a contract or do an act under circumstances which prevented the exercise of free will of the party constrained or intimidated: *Griffith* v. *Sitgreaves,* 90 Pa. St. 161; *Hackley* v. *Headley,* 45 Mich, 569; *Magoon* v. *Reber,* 76 Wis. 392; 6 Am. & Eng. Enc. Law (1 ed.), 57; *Beckwith* v. *Frisby,* 32 Vt. 559; *Adams* v. *Rens,* 68 N. C. 134 (12 Am. Rep. 627); *Briggs* v. *Lewiston,* 29 Me. 472; *Grim* v. *School District,* 57 Pa. St. 433 (98 Am. Dec. 237); *First Nat. Bank* v. *Watkins,*

21 Mich. 483; *Byne* v. *Glem,* 41 Mich. 112; *Harmony* v. *Bingham,* 12 N. Y. 108 (64 Am. Dec. 535); *Stillman* v. *United States,* 101 U. S. 465; *Brown* v. *Pierce,* 74 U. S. (7 Wall.), 215; *Baker* v. *Morton,* 79 U. S. (12 Wall.), 150; *King* v. *Williams,* 65 Iowa, 167.

For respondent there was an oral argument by *Messrs. D. R. N. Blackburn* and *J. N. Duncan,* with a brief to this effect:

The threats claimed are insufficient to show duress: *Wright* v. *Remington,* 41 N. J. Law, 48 (32 Am. Rep. 186); *Buck* v. *Axt,* 85 Ind. 514; *Miller* v. *Miller,* 68 Penn. St. 492; *Bouldin* v. *Reynold,* 58 Ind. 491; *Adam* v. *Stringer,* 78 Ind. 175; *Bailey* v. *Shannon,* 26 Ark. 280; *Wilkerson* v. *Hood,* 65 Mo. App. 491.

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The evidence shows that the plaintiff and the defendant Kester were married in 1876, and that about four or five months prior to the execution of the notes sued on she disobeyed his commands by attending church, whereupon he said to her, as she testifies, that he would cut her throat and take her heart out. The difficulty thus occasioned finally resulted in an agreement for their separation. At that time Kester owned a farm near Lebanon, Or., which he and his wife conveyed to the defendant Denney, and she received on account thereof the sum of $1,000 and the note in question as the share of her husband's property to which she was entitled, whereupon she immediately left him, and went to Albany, Or., to live with her father. But she and her husband, having become reconciled, subscribed their names to the following memorandum: "Albany, Or., November 24, 1892. This is to certify that we, the undersigned, do agree to come together with the understanding that we pay $1,500 each on lands, half to be deeded to James Kester and half to Emma

S. Kester.    Emma S. Kester further agrees that the five
hundred dollar note she holds against her husband, James
Kester, shall be spent in stock and farming implements, and
held as equal property, and, if there should be any money to
loan, half shall be loaned for James Kester and half for
Emma S. Kester.    Emma S. Kester.    James Kester."    They
thereupon resumed their marital relations, and in pursuance
of said agreement purchased a farm near Jefferson, Or., she
paying on account of her part thereof the sum of $1,535, and
he on account of his part the sum of $1,065, reserving, as he
testifies, by a modification of the agreement, the sum of $435
for living expenses and to build a house on the premises.
Kester, having taken to the farm so purchased nine horses
and colts, two sets of harness, one wagon, one cow, a binder,
a fanning mill, and a harrow, which he valued at the sum of
$609.50, and, claiming that under the agreement the property
so placed upon the farm amounted to a satisfaction of the
note, requested the plaintiff to remove Denney's signature
therefrom; but she declined to comply therewith, and testifies
concerning his threat, which, she claims, superinduced the
mutilation of the note, as follows:    "And then later on, in
the morning, when I came to Albany,—just when I and my
son were starting,—he said to me in a very commanding
tone, 'You see that you take that name off of that note.'    I
saw by the tone of his voice that his violent temper was
aroused, and I knew I dared not return home without taking
that name off, by his looks and also by past experience; and
he also said to me, 'If you ever attempt to collect that note,
or any part of it, I will heap coals of fire on your head as
long as you live.' "    She further testifies that after she had
taken Denney's signature from the note Kester said to her
that if she did not give up the entire note he would leave her,
saying several times that he would run a dagger through her;
since which she has not been in his presence.    It appears from
the testimony that plaintiff removed Denney's signature from

the note in the spring of 1893, and that her husband lived with and did not threaten to desert her until about January, 1898, when she claims he said he would run a dagger through her. It also appears that Kester, having failed to pay the installments of the purchase price of his part of the farm as he had agreed, reconveyed the premises to the person from whom he secured the title, sold what personal property he possessed, and went to live with Denney. The complaint is predicated in part upon the assumption that the plaintiff, superinduced by the defendant's threat to abandon her, was thereby compelled, against her will, to mutilate the note; in consequence of which her act in this respect should be avoided.

1. It has been held that the threats of a husband to desert his wife unless she complied with his demands, accompanied by general abusive treatment, constitute such duress as will, in a suit for that purpose, avoid her contract when entered into under a reasonable apprehension that the menaces will be carried into effect; provided, however, that the party to the contract be aware of such threats at the time of entering into the agreement: *Tapley* v. *Tapley*, 10 Minn. 448 (88 Am. Dec. 76) ; *Kocourek* v. *Marak*, 54 Tex. 401 (38 Am. Rep. 623) ; *Line* v. *Blizzard*, 70 Ind. 23. Whatever the rule may be, however, in this respect, it can have no application herein, for the testimony conclusively shows that Kester's threat to abandon his wife was not made until more than four years after she tore Denney's signature off the note, and hence it cannot be said that her act was superinduced by a reasonable apprehension that he would desert her. And if it be admitted that Kester told her that he would run a dagger through her—which he denies—such statement, if made at all, was at the time he told her that he would leave her, and the threat could have no retroactive effect so as to render voidable any act of hers occurring prior thereto. Kester, in testifying in relation to the threat upon which the plaintiff re-

lies, says: "All there was about coals of fire, I told her she was making a regular hell here for me, and that I could probably heap coals, too, if she would keep on. Q. Now, about cutting her throat; what about that? A. Don't remember that I ever said anything of the kind. Q. Ever say anything that indicated that? A. I told her, I guess, she ought to have her throat cut. That was before we separated the first time; maybe a year before; I don't know." While Kester's threats made after the mutilation of the note afford no grounds for avoiding her act, any threats made by him before and after she removed Denney's signature therefrom ought to be considered for the purpose of ascertaining his disposition towards her, and whether she reasonably apprehended personal violence from his threat that he would heap coals of fire on her head unless she complied with his demands.

2.   His remark, made to her about a year prior to their first separation, that she ought to have her throat cut, is certainly evidence of an ill feeling towards her; but such remark is not equivalent to a threat that he would do it. The expression was probably momentary only, and may have been provoked by her; for his sister and her husband, the defendant Denney, testify that his disposition is not violent. Kester's threat that he would heap coals of fire on his wife's head could not have been understood by her in the literal sense which the meaning of the words implies, but the statement was hyperbolical, and plaintiff probably understood the menace to mean that, unless she complied with his demand to remove Denney's signature from the note, he would annoy her by his conduct. Giving to the threat the meaning which the plaintiff and her husband undoubtedly understood, we do not think the menace sufficient to overcome her will power, or that she was compelled thereby to destroy the note, but that she conceded the justice of her husband's contention that the note had been paid by the stock and farming implements which he furnished; and her consent to the mutilation of the

note, having thus been voluntarily secured, cannot now be revoked because her husband may have thereafter sold or disposed of the property which afforded the consideration for the cancellation of the note.   There is some conflict in the evidence relative to Kester's temper, but the court saw the witnesses, and heard them testify, and was enabled thereby to determine whether Kester possessed a violent temper; and, having found for the defendant, we must conclude therefrom that his disposition and treatment of his wife had not been such as to cause her reasonably to apprehend any personal violence at his hands, and hence the decree is affirmed.

AFFIRMED.