Argued July 7, affirmed August 1, 1916.

## BALDWIN CO. *v.* SAVAGE.*

(159 Pac. 80.)

**Appeal and Error—Review—Findings of Fact by Trial Court—Conclusiveness.**

1. The findings of fact by the trial court on conflicting oral testimony, while not conclusive on appeal, are entitled to great weight.

**Bills and Notes—Mortgages—"Duress"—Threats of Imprisonment.**

2. Evidence *held* sufficient to sustain a finding that notes and mortgages should be set aside as procured by "duress" and executed under threats that defendants' son would be sent to the penitentiary for embezzling money while agent of the mortgagee.

**Bills and Notes—Mortgages—Validity—Duress—Threats of Imprisonment.**

3. Notes and mortgages, given by parents under the influence of threats that otherwise their son will be sent to the penitentiary for embezzlement of moneys of the mortgagee, are voidable for duress.

[As to recovery of money paid under duress, see note in 94 Am. St. Rep. 419.]

**Mortgages—Validity—Duress—Threats of Imprisonment.**

4. Where defendants to save their son from the penitentiary, executed notes and mortgages in payment of money embezzled by him, the taking by them of a chattel mortgage from such son as partial

---

*For authorities passing on the question of validity of mortgage procured by threats of prosecution of relative, see note in 20 L. R. A. (N. S.) 484.                                        REPORTER.

indemnity, on the suggestion of the mortgagee's agents, does not estop them from interposing the defense of duress in an action to foreclose the real estate mortgages.

**Mortgages—Foreclosure—Defenses—Duress—Waiver—Evidence—Sufficiency.**

5. Evidence *held* insufficient to warrant a finding that defendants waived their defense of duress to the foreclosure of mortgages by securing a postponement of the trial by promising to pay the amount.

**Mortgages—Foreclosure—Defenses—Duress—Estoppel.**

6. In foreclosure, defendants are not estopped from asserting the invalidity of the mortgages by reason of duress, consisting of threats to imprison their son for embezzlement by the payment of a chattel mortgage after the statute of limitations, Section 1377, L. O. L., had barred the prosecutions of such son.

**Payment—Voluntary Payment in Discharge of Voidable Obligation—Recovery.**

7. A payment, voluntarily made in the discharge of a note and mortgage, cannot be recovered although the note and mortgage were procured by duress, consisting of threats of imprisonment.

From Marion: WILLIAM GALLOWAY, Judge.

Department 2. Statement by MR. CHIEF JUSTICE MOORE.

This is a suit by the Baldwin Company, a corporation, against J. F. Savage and Margaret Savage, L. F. Savage, W. E. Savage and Alwilda Savage, and James Withycombe, Ben W. Olcott and Thos. B. Kay, constituting the state land board, to foreclose a mortgage and to recover the amount of four promissory notes, the payment of which was thus undertaken to be secured. The admitted facts, respecting the execution of this mortgage and of other securities, are that the plaintiff is a corporation engaged in manufacturing and selling musical instruments. The company delivered to the defendant L. F. Savage, its local agent at Salem, Oregon, pianos which he was to sell at stipulated prices, retain a specified commission, and pay over the remainder to his principal. In April, 1913, O. A. Berger, the plaintiff's general agent, visiting

Salem, discovered that Savage had sold goods so de-
livered, receiving therefor more than $2,000, which sum
he unlawfully appropriated and was unable to repay
any part thereof.   After several days' effort Berger
secured from such local agent and from his father, the
defendant J. F. Savage, their promissory notes for the
sum so misappropriated.   The officers of the plain-
tiff's Pacific Coast agency at San Francisco, Califor-
nia, refused to accept these notes, and demanded that
they should be secured.   For that purpose E. J.
Jorgenson, a representative of the company, called
upon L. F. Savage, and on June 25, 1913, procured
from him and from his father their new promissory
notes, one for $552, payable October 5th of that year,
and three others, each for the sum of $515 and matur-
ing, respectively, April 5, 1914, August 5th and Decem-
ber 5th of the latter year, with 8 per cent interest per
annum.   In order to secure their payment J. F. Savage
and his wife, the defendant Margaret, the mother of
the defendant L. F. Savage, executed to the plaintiff a
mortgage of 30 acres of land in Marion County, Ore-
gon, which sealed instrument was duly filed for record.
At the time this security was given, Berger, again visit-
ing Salem, detected another misappropriation by his
local agent, amounting to $601, to evidence which debt
J. F. Savage, on June 28, 1913, also gave the plaintiff
his promissory note, maturing December 24th of that
year, and secured the same by a chattel mortgage of
eight horses and ten cows.   As partial indemnity for
the liability thus assumed, L. F. Savage, on June 30,
1913, executed to his father a promissory note for
$1,000, maturing in a year, with 8 per cent interest, and
to secure the payment thereof also gave a chattel mort-
gage upon two horses, one express wagon, one buggy,
and one electric piano, which mortgage was duly filed.

About July 26, 1913, the plaintiff took from L. F. Savage all its goods then in his possession and discontinued his agency. When the first promissory note secured by the realty mortgage was about due, an agreement was entered into by the plaintiff and J. F. Savage, at his request, whereby it was stipulated that the chattel mortgage note might be paid off in lieu of such first note, the maturity of which was thus deferred until December 24, 1913.

This suit was commenced December 19, 1913, prior to the maturity of the first note, the payment of which had been deferred until the 24th of that month. A supplemental complaint, in the usual form, was filed May 10, 1915, alleging that no payments had been made on the realty mortgage notes. The answer of the defendants J. F. Savage and Margaret Savage denies some of the averments of the complaint, and for a further defense alleges, in substance, that prior to and on June 25, 1913, the plaintiff's agents accused the defendant L. F. Savage of having converted to his own use about $2,100 belonging to the company, thereby rendering himself liable to a criminal prosecution for a felony, which action would be instituted unless J. F. Savage would repay that sum to the plaintiff or execute to it promissory notes evidencing that amount; that, believing such representations to be true, and that the threat would be executed unless complied with, he, while laboring under the fear and duress caused by the menace, executed the four promissory notes mentioned in the complaint; that thereafter the plaintiff's agent represented to the defendant J. F. Savage and to his wife that their son would be prosecuted in the criminal courts of this state for the misappropriation of such sum of money unless they executed to the plaintiff a mortgage of the real property described in the com-

plaint to secure the payment of the four promissory notes; that under the impulse of such threat they executed the real estate mortgage; and that the lien thus undertaken to be created constitutes a cloud upon the title to such land.   For a second defense the execution of the chattel mortgage and note is alleged to have been procured under the same threat as in the first instance; that J. F. Savage paid to the plaintiff $601, the sum named in the chattel mortgage note, and interest thereon, while laboring under the threats that his son would be prosecuted for the commission of a felony unless such payment were made.   The answer prays that the notes and the realty mortgage be set aside, and that the answering defendants recover from the plaintiff the sum of $601 so paid on account of the chattel mortgage.

The reply put in issue the allegations of new matter in the answer, and further averred that the promissory notes mentioned were executed in consideration of extending to the defendant L. F. Savage further time within which to pay his indebtedness to the plaintiff. For a further reply it is alleged that the defendants ought to be estopped to set forth the separate defense relied upon for that they paid the amount due on the chattel mortgage note, and that after some of the notes secured by the real estate mortgage had become due, they, with full knowledge of all the circumstances and conditions hereinbefore set forth, ratified the contract, and promised to pay the amount of such notes in consideration of an extension of time for the payment thereof.   Based on these issues, the cause was tried, resulting in a decree canceling the notes and mortgage sued on herein, but refusing to award a repayment of any part of $601 received on account of the chattel

mortgage note.    From this decree the plaintiff and the answering defendants separately appeal.    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Walter C. Winslow.*

For respondents there was a brief over the names of *Messrs. McNary & McNary* and *Mr. Everil M. Page,* with an oral argument by *Mr. Charles L. McNary.*

Opinion by MR. CHIEF JUSTICE MOORE.

The defendant J. F. Savage testified: That Mr. Berger, the plaintiff's general agent, telephoned from Salem, Oregon, to the farm where the witness lived, informing him that his son had appropriated money not his own, thereby rendering himself liable to prosecution.    That the following morning the witness went to Salem, where Berger told him his son would be prosecuted by the plaintiff if he did not get security or repay the money which he owed it.    That prior thereto the witness had no knowledge of his son's failure to keep his contract with the plaintiff, and the information shocked him so that he could scarcely talk, and was thereby induced to execute the first promissory notes. That several weeks thereafter Mr. Jorgenson telephoned the witness from Salem, saying the plaintiff could not accept the notes that had been delivered to it, and that security therefor must be given.    That the next day the witness went to the city and met this representative of the company, who also informed him that his son had misappropriated the plaintiff's money, thereby rendering himself liable to a criminal action, and he would be prosecuted therefor unless a mortgage were executed.    That after spending the day at Salem he had to return to his home to milk the cows, whereupon Jorgenson said to the witness:

"Father, come on and go; we will care for the boy [meaning L. F. Savage] until you can get back tomorrow morning."

That on the succeeding day the witness again returned to the city, where the mortgage was prepared and Jorgenson returned with him to his home; that after arriving at such place Jorgenson was called to the phone, and, turning to the witness, said:

"What do you know about that? There's another piano that we just now heard from. Mr. Berger has just now found out $600 for another piano."

That the real estate mortgage was executed the next morning, and the chattel mortgage given three days thereafter, and that these securities were given to save his son from being sent to the penitentiary.

The defendant Mrs. Margaret Savage testified that Mr. Jorgenson visited their farm home, bringing the mortgage with him; that she knew all about the execution of that instrument which was given to save her son; that, referring to this security, she said to Mr. Jorgenson, "I hate awfully bad to do this, but I would have to do it."

F. L. Pound, a notary public, who took and certified to the acknowledgement of the realty mortgage, testified that in the presence of Mr. Jorgenson Mr. Savage said, "I didn't think I would ever be called upon to sign any such paper"; that Mrs. Savage said to the witness she hated to sign the mortgage; didn't feel like signing it. In answer to the question, "Did she say anything about that it was for her son, or anything?" Mr. Pound replied: "Yes, it was to save their son; they both said that; it was to save their son, that they did it."

O. A. Berger, appearing for the plaintiff, was asked by its counsel:

81 Or.—25

"At that time, you heard the testimony of Mr. Savage here, as to certain threats that were made against him if this wasn't fixed up and these notes signed—that the company would prosecute Frank [L. F. Savage]; now what is the fact about that?"

The witness answered:

"Why, I don't recall making any threats whatsoever, Mr. Winslow, to Mr. J. F. Savage, or anyone.

"Q. Well, did you make those threats to anyone?

"A. No, sir.

"Q. Now, when you say you don't recall that, what do you mean?

"A. Well, in fact, I will say that I didn't make any threats. I said to Mr. J. F. [Savage] that Frank violated the terms of his contract."

E. J. Jorgenson, in answer to the inquiry of the plaintiff's counsel, "Was there any intimation or insinuation that if the deal [the execution of the realty mortgage] was not fixed up criminal proceedings would be had?" said, "Not in the least."

1, 2. It will thus be seen there is a decided conflict in the testimony on the question of threats respecting the prosecution of L. F. Savage upon a criminal charge. The trial court saw the witnesses and was thereby afforded an opportunity to note their appearance, manner of testifying and bearing while under examination, which personal observation is vastly superior to that enjoyed by this court from a mere examination of a typewritten copy of the questions asked, and the answers given. The conclusion thus reached by that court, though not controlling on appeal, is entitled to great respect, and particularly so when it is remembered how Mr. Berger at first hesitated when asked about any threats that had been made. We conclude, therefore, that such threats were made, and that the parents of L. F. Savage, fearing the consequences of his misappropriation of the plaintiff's money which

was intrusted to him, were ready to do anything in their power to prevent their son from being convicted upon a criminal charge, and in consequence thereof suffering imprisonment in the state penitentiary.

3. The question to be considered is whether or not the threats of the plaintiff's agents which were made to J. F. Savage and his wife to have their son prosecuted in a criminal action upon a charge of embezzlement unless the sums of money which were conceded to have been misappropriated by him were either paid or secured so worked upon and affected the minds of his parents as to destroy free agency and to compel them, without their own volition, to execute the notes and mortgage described in the complaint.

"Duress is that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or in apprehension to overcome the mind of a person of ordinary firmness. It consists not merely in the act of imprisonment or other hardship to which the party was subjected, but in the state of mind produced by those circumstances, and in which the act sought to be avoided was done": 9 Cyc. 443.

See, also, *Parmentier* v. *Pater,* 13 Or. 121 (9 Pac. 59); *Ross* v. *Ross,* 21 Or. 9 (26 Pac. 1007); *Schoellhamer* v. *Rometsch,* 26 Or. 394 (38 Pac. 344); *Rostein* v. *Park,* 38 Or. 1 (62 Pac. 529); *Kester* v. *Kester,* 38 Or. 10 (62 Pac. 635); *McNair* v. *Benson,* 63 Or. 66 (126 Pac. 20); *Guinn* v. *Sumpter Valley Ry. Co.,* 63 Or. 368 (127 Pac. 987); *Hunt* v. *Hunt,* 67 Or. 178 (132 Pac. 958, 134 Pac. 1180); *Horn* v. *Davis,* 70 Or. 498 (142 Pac. 544).

4. A text-writer in discussing this subject observes:

"Duress of the person may be accomplished by unlawful imprisonment or violence. This unlawful imprisonment or violence may be directed directly against the other party to the contract, or the husband or wife,

parent or child or other near relative of such party'':
Elliott, Cont., § 140.

Parental love will usually prompt a father or mother
to make great sacrifices for a son or daughter, particu-
larly so when such child is threatened with impending
danger.  In order to avoid the shame and disgrace
which the trial of an offspring, charged with the com-
mission of a crime, will necessarily entail, his father
and mother will ordinarily impoverish themselves to
avoid an indictment or a conviction.  Threats, when
based upon admitted facts which would render a parent
subject to a criminal prosecution and judgment therein,
will not usually affect him so much as when a simi-
lar charge is preferred against his son or daughter.
When, however, such threats are made to a parent
against his offspring the menaces will generally pro-
duce such apprehensions of evil as to overthrow reason
and judgment and to induce the making of a contract
whereby the father or mother is ready to make any sur-
render of right or property to avert the calamity and
protect the child.   The court in *Meech* v. *Lee,* 82 Mich.
288 (46 N. W. 398), discussing this subject say:

"No more powerful and constraining force can be
brought to bear upon a man to overcome his will, and
extort from him an obligation, than threats of great in-
jury to his child.  Both upon reason and upon the
weight of the authorities we are of opinion that a par-
ent may void his obligation by duress to his child."

To the same effect, see, also, *Foley* v. *Greene,* 14 R. I.
618 (51 Am. Rep. 419).  Transactions consummated
under the supposed circumstances, affecting such
rights, are voidable by reason of the duress which im-
pelled their execution.

It is believed the weight of the testimony conclusively
shows that the execution of the notes and mortgage

was actuated by the threats of the plaintiff's agents, thereby rendering such apparent evidence of indebtedness and the security given for the payment thereof voidable.

The remaining question is whether or not J. F. Savage and his wife are estopped by their conduct from interposing the defense relied upon in this suit. It will be remembered that L. F. Savage, by way of partial indemnity, gave to his father a promissory note for $1,000, and undertook to secure the payment thereof by a chattel mortgage. The testimony shows that no payment had been made on this obligation, and that this note and mortgage were executed at the suggestion of the plaintiff's agents. Such being the case, it will be assumed, without deciding the question, that their principal was not prejudiced thereby and in no manner changed its attitude toward the answering defendants in consequence thereof, though the company might possibly have had the mortgage of L. F. Savage executed to it. But, however this may be, the conduct relied upon was that of the plaintiff, and no estoppel can arise by reason thereof as against the defendants.

5. It is maintained that the trial of this suit was postponed in consideration of the promise of J. F. Savage to pay the amount of the notes. To substantiate this contention reliance is had upon that defendant's testimony, an examination of which induces the belief that it is not sufficient for that purpose.

It is insisted by plaintiff's counsel that J. F. Savage paid off the chattel mortgage note before it matured, and at a time when he knew, as he now asserts, that the execution of this evidence of indebtedness was induced by threats, and, this being so, he ratified both mortgage contracts, and by reason thereof is estopped

to allege or prove any facts to the contrary. A similar contention was made in the case of *Bentley* v. *Robson,* 117 Mich. 691, 697 (76 N. W. 146, 149), where it is said:

"The record shows the learned circuit judge was justified by the record in most of his findings of fact. It is impossible to read the record without coming to the conclusion that Mrs. Bentley understood when she gave the mortgage that her husband was in the custody of the officers, and that to save him from being conveyed to jail it was necessary for him to give the mortgage which she executed. It was this motive which actuated her to make it. There is nothing in the record to indicate it would have been made had she not believed it would have this effect. The case comes clearly within the principles established by the following decisions (citing cases). The court was right in holding the mortgage was tainted with duress. It is now said, even conceding the mortgage was obtained by duress, it was ratified after the duress had passed by making payments upon it, and by attempting to have it discounted. The conclusion we reach from the record is that the wife and family did all that was done in the expectation and belief that it was necessary to be done to save Mr. Bentley from being imprisoned as the result of his criminal act. What was done after the mortgage was given was in the same line as the giving of the mortgage, prompted by the same motive, expecting to bring about the same result."

6. The punishment of an agent convicted of embezzlement is the same as that upon a conviction for larceny: Section 1955, L. O. L. A criminal action for any felony, other than murder or manslaughter, must be commenced within three years after its commission: Id., § 1377. When the plaintiff's money was converted by L. F. Savage to his own use does not appear, nor is it manifest when the duress was removed. If it be

assumed, however, that the statute of limitations had run against the crime when the chattel mortgage note was discharged, and that such liquidation was not induced by fear that the threat to prosecute L. F. Savage could be executed, the settlement of that obligation was no payment of any part of the realty mortgage, and, this being so, no estoppel can arise from such conduct in respect to a different voidable contract.

7. It will be remembered that an appeal was taken from that part of the decree which denied a recovery of the money expended in liquidating the chattel mortgage note. As that payment was voluntarily made, it cannot be recovered: *Holmes* v. *Riggs,* 52 Or. 334 (97 Pac. 551).

The decree should be affirmed, and it is so ordered.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.