These two suits were consolidated at the final hearing. The first is by a judgment creditor and seeks to set aside a mortgage as in fraud of creditors. The second, to forclose that mortgage. Answers filed by the mortgagors set up the defense that the mortgage was obtained by duress, but deny that it was given with intent to defraud. If the mortgage is void for any reason a decree to that effect would inure to the benefit of the judgment creditor. At the conclusion of the final hearing I announced that the allegations of fraud and conspiracy in the making of the mortgage had not been sustained, but that the defense of duress had, in my judgment, been made out, and that I would advise a decree accordingly. From this decree an appeal has been taken, for which reason these conclusions are written.
Simon S. Gittleman, a member of the bar of this state, embezzled the sum of $6,000 from Sidney Westheimer, a client. To prevent Westheimer from carrying out his threat to jail Gittleman on the charge of embezzlement, and to disbar him, the defendants Alter Gittleman and Jennie Gittleman, parents of Simon, executed the mortgage in question. Westheimer threatened to jail Simon if the mortgage was not executed, but agreed not to prosecute in the event that it was. There is no question in my mind that at the time of the execution of the mortgage the mortgagors were acting under such oppression of the threats of the mortgagee as to prevent their acting of their own free will and that they acted rather at the will of the mortgagee. The parents of this defaulting son are Hebrews of high standing in their community. The father is a Rabbi and very popular as a teacher of Hebrew. Both were painfully shocked at the news of their son's wrongdoing. It is undisputed that at the conference which resulted in the giving of this mortgage the mother, who was a tenant by the entirety of the mortgaged premises, was in tears and *Page 100 
weepingly consented to the execution of the mortgage in order to save her son from imprisonment and disgrace. I believe that the distress of the parents' mind was such that they could not realize what they were doing and that there was probably nothing in their power that they would not have done had it been demanded of them at that time as the price of their son's freedom.
It is contended that threats of imprisonment of a son for a crime which he has committed resulting in the procurement of the mortgage from the parents, as here, is not such duress as will void that mortgage; that while such threats, directed against the mortgagor, might invalidate the mortgage, yet the doctrine does not extend to a case where the threats were against the child of the mortgagor.
But in Ball v. Ward. 76 N.J. Eq. 8; affirmed, 79 N.J. Eq. 170,
it was held that it does. It has been well said that "parental love will usually prompt a father or mother to make great sacrifice for a son or daughter, particularly so when such child is threatened with impending danger. In order to avoid the shame and disgrace which the trial of an offspring, charged with the commission of a crime, will necessarily entail, his father and mother will ordinarily impoverish themselves to avoid an indictment or conviction." Baldwin Co. v. Savage, 81 Or. 379.
And that "no more powerful and constraining force can be brought to bear upon a man to overcome his will, and extort from him an obligation, than threats of great injury to his child."Meech v. Lee, 82 Mich. 274; 46 N.W. Rep. 398.
It is further contended that where a crime has in fact been committed and the threat is of lawful arrest or imprisonment for that crime, such a threat is not duress regardless of its effect upon the mind of the parents. The court of errors and appeals inBall v. Ward, supra, said: "The question whether or not a conveyance made by a parent to prevent the imprisonment of a child who has in fact been guilty of a criminal offense may afterward be set aside at the option of the parents, is one upon which judicial views are not in harmony," and declined to pass upon that question, as it was not presented under the facts of that case. *Page 101 
But while the point discussed may not have been there involved, it seems to me that the reasoning of Vice-Chancellor Emery is sound and supported by respectable authority. While there is undoubtedly a conflict of opinion on this question, his is said to be the better view. 9 R.C.L. tit. "Duress" 719 § 9; notes26 L.R.A. 48; 20 L.R.A. (N.S.) 486; 42 L.R.A. (N.S.) 329; Williamson Co. v. Ackerman, 77 Kan. 502; 20 L.R.A. (N.S.)484; Anderson v. Kelley, 57 Okla. 109; Colclough v. Bank,150 Ga. 316; Portland Cattle Loan Co. v. Featherly, 74 Mont. 531.
In my judgment, the question is not one of the guilt or innocence of the accused, but of the unlawful subjection of the will of the actor to that of the accuser.