MARGARET A. BONNEY, Defendant in Error, *vs.* LAWTON
C. BONNEY, Plaintiff in Error.

*Opinion filed December 15, 1908—Rehearing denied Feb. 4, 1909.*

1. DURESS—*when a party does not sign paper under duress.* A
party in his right mind and in full control of his faculties, who
understands what he is doing and has full power to sign a paper
presented to him or to refuse to do so, does not, if he signs the
paper, sign it under duress.

2. RELEASE—*a release of liability made without consideration is
not binding.* An instrument affecting property rights, such as a
release of liability for the conversion of bonds, which is executed
without consideration, has no binding force or effect and may be
avoided as between the parties.

3. SAME—*what is not consideration for release.* An agreement
for alimony is not consideration for a release signed by a married
woman releasing her husband's brother from liability for the con-
version of her bonds, though she signed it because she was told
that if she did not do so her husband would attempt, in the pend-
ing divorce proceeding, to take her children from her, where the
agreement for alimony was a distinct transaction, entered into
without reference to and independently of any liability of the
brother for the bonds.

WRIT OF ERROR to the Appellate Court for the First
District;—heard in that court on appeal from the Circuit
Court of Cook county; the Hon. THOMAS G. WINDES,
Judge, presiding.

This was a bill in chancery filed by Margaret A. Bon-
ney against Lawton C. Bonney on the 31st day of Decem-
ber, 1900, in the circuit court of Cook county, to set aside
and cancel a certain release bearing date December 19, 1899,
whereby Margaret A. Bonney waived any and all claim
which she had against Lawton C. Bonney by reason of his
having taken possession of and disposed of $30,000 worth
of the bonds of the Chicago General Railway Company of
which Margaret A. Bonney was the owner and to require
him to return to her said bonds, and on a failure to return

said bonds that he be required to account to her for the value of said bonds. The defendant answered the bill and filed a cross-bill, to which he made Margaret A. Bonney and Valerian Bonney, Ada Bonney, Pauline Bonney, James D. Lamb, the People's Trust and Savings Bank and Charles L. Bonney defendants. Answers and replications were filed to the cross-bill of Lawton C. Bonney by the defendants thereto, and Charles L. Bonney filed a cross-bill, and a cross-bill by the guardian *ad litem* of Valerian Bonney, Ada Bonney and Pauline Bonney, the minor children of Margaret A. Bonney and Charles L. Bonney, was also filed. All the cross-bills were answered and replications were filed, and the cause was referred to the master to take the proofs and report his conclusions. The master filed a report, in which, after finding that the allegations of the original bill had been established by the evidence, he recommended that all the cross-bills be dismissed and that a decree be entered upon the original bill in favor of Margaret A. Bonney, according to the prayer of said bill. Lawton C. Bonney filed objections to the master's report with the master, which were overruled and renewed as exceptions in the circuit court, where they were in part sustained, and a decree was entered in that court dismissing the original and all the cross-bills for want of equity, whereupon Margaret A. Bonney prosecuted an appeal to the Appellate Court for the First District, where the decree of the circuit court was reversed and the cause remanded, with directions to the circuit court to enter a decree upon the original bill in accordance with the recommendations of the master and that the cross-bills be dismissed, and Lawton C. Bonney has sued out a writ of error from this court to review the judgment of the Appellate Court.

From the foregoing statement it will be seen that the parties to the litigation, other than Margaret A. Bonney and Lawton C. Bonney, have been eliminated in this court, and the sole question here to be decided is, did the Appel-

late Court err in holding that the release from Margaret A. Bonney to Lawton C. Bonney, bearing date December 19, 1899, should be set aside and canceled and said Lawton C. Bonney be required to turn over to Margaret A. Bonney said bonds, and in case of a failure so to do to account to her for the value of said bonds?

The record filed in this court contains sixteen hundred and fifty-six pages and the abstract one hundred and fifty-two pages, and the evidence introduced in support of the cross-bills is commingled throughout the record with that introduced in support of the original bill. The questions, however, involved in this court are not, when searched out in the record, numerous or difficult of solution.

It appears that Margaret A. Bonney and Charles L. Bonney were husband and wife; that Margaret A. Bonney inherited from her father a ten-acre tract of land situated near the city of Chicago and about $10,000 in money, some time after her marriage with Charles L. Bonney; that Lawton C. Bonney and Charles L. Bonney are brothers, and were engaged in the real estate business in the city of Chicago under the firm name of Bonney Bros.; that they took charge of Margaret A. Bonney's property inherited from her father and subdivided and sold the real estate and used her money substantially as their own; that afterwards they promoted the Chicago General Railway Company, which operated in the city of Chicago; that Charles L. Bonney, some time prior to the year 1899, transferred to Margaret A. Bonney thirty-one of the bonds of said railway company of the par value of $30,000; that Margaret A. Bonney had them in her possession, and had collected for a number of years the interest accruing thereon, and used the same in support, in part, of herself and three minor children; that in 1899 Charles L. Bonney and Margaret A. Bonney made a trip to Europe; that a young woman accompanied them of whom Margaret A. Bonney became very jealous, probably with cause, before their return, and that upon their

return to America, early in the fall of 1899, Charles L. Bonney and his wife separated; that in the month of October, 1899, Margaret A. Bonney and her two minor daughters, in company with a Mrs. Leffingwell, returned to Europe with the consent of her husband and upon his promise to support her in Europe in the manner in which she had been living in Chicago; that prior to her going to Europe the second time she placed the said railway bonds with the Merchants' Loan and Trust Company in the city of Chicago, with instructions to deliver them, upon request, to either Lawton C. or Charles L. Bonney. Upon the arrival of Margaret A. Bonney and her party in Rome she soon was without funds and was unable to hear from her husband. She thereupon left her children in Rome, in company with Mrs. Leffingwell, and returned to Chicago, where she arrived on November 23, 1899. She immediately went to the bank where she had left her bonds and found that they had been removed by Lawton C. Bonney on the sixth of November. In company with Mr. Leffingwell, an attorney who was a mutual friend of herself and husband, she called upon Lawton C. Bonney to obtain her bonds. He informed her he had her bonds but desired to retain them for a short time, as her husband, Charles L. Bonney, was about to make a sale of the Chicago General Railway Company, and that her bonds, together with other bonds, would, upon such sale being consummated, be guaranteed by the purchaser and that her bonds would then be returned to her. By such representations he prevailed upon her to go to Clinton, Iowa, to the home of her mother, with a view to remaining until a sale of the railway could be consummated. She went to Clinton, where she remained for some weeks, but nothing was done toward the sale of the railway. In the month of December, 1899, the subject of a divorce of Margaret A. Bonney from her husband, Charles L. Bonney, was talked of, and on the 14th of that month. a meeting was held in Chicago, at the office of Leffing-

well, at which Charles L. Bonney and the solicitor of Margaret A. Bonney, Major Connelly, of Rock Island, and Mr. Ankeny, a brother of Margaret A. Bonney, were present. Charles L. Bonney made a proposition for settlement of alimony in case a divorce should be granted to Margaret A. Bonney, but nothing was done on that day and the parties separated. On the following day the solicitors of the parties,—Mr. Plumb representing Charles L. Bonney and Major Connelly representing Margaret A. Bonney,—in company with Mr. Ankeny and Lawton C. Bonney, had another interview, at which Charles L. Bonney or Margaret A. Bonney was not present. The second interview resulted in an agreement that Margaret A. Bonney was to obtain a divorce, and that $2500 in cash was to be paid her, and four promissory notes, due in six, twelve, eighteen and twenty-four months, for the sum of $2500 each, signed by Charles L. and Lawton C. Bonney, and thirty-one lots situated in the city of Chicago, were to be given to Margaret A. Bonney as alimony, and she was to have the custody of the children. In pursuance of said agreement a bill for divorce was prepared in Mr. Leffingwell's office, a young man in his office by the name of Barnes being named therein as solicitor, and Charles L. Bonney signed an appearance and an answer admitting the averments of the bill, and said documents being filed, a decree for divorce was granted thereon to Mrs. Bonney in the circuit court of Cook county on the ground of extreme and repeated cruelty. Nothing had been said to Margaret A. Bonney during the negotiations leading up to the divorce proceeding or the settlement of the alimony question about Margaret A. Bonney surrendering her bonds or any claim for their conversion by Lawton C. Bonney, but just as the parties were starting for the court house to have a hearing in the divorce proceeding Mr. Leffingwell said to Margaret A. Bonney that Lawton C. Bonney had appropriated her railway bonds to his own use and that he demanded of her

a release from all liability growing out of that transaction, and produced a paper, written in pencil, releasing said Lawton C. Bonney from such liability, for her to sign. Mrs. Bonney at first declined to execute such release. Mr. Leffingwell thereupon said to her that if she did not sign the release Charles L. Bonney had said that he would attempt, in the divorce proceedings, to take from her her children. After reading the release and after some talk with Leffingwell and her brother, Mr. Ankeny, who was present, she signed the pencil memoranda and signed her name upon a blank sheet of paper, upon which Mr. Leffingwell informed her the pencil memoranda would be written in ink, and they went into court, the release being delivered to Leffingwell. Margaret A. Bonney and Lawton C. Bonney testified to the cruelty of Charles L. Bonney, and a decree of divorce was granted. The $2500 was paid to Margaret A. Bonney, and the four promissory notes, signed "Bonney Bros.," were delivered to Mr. Lamb, and the city property was conveyed to Mr. Lamb as trustee, which settlement of the alimony was confirmed by a supplemental decree entered in the divorce proceeding, and the release was delivered by Leffingwell to Lawton C. Bonney. Margaret A. Bonney immediately went to Rome, where her daughters were, where she remained until the month of June, 1900, when she returned to Chicago. Upon her return Mrs. Bonney demanded the bonds of Lawton C. Bonney, and upon his refusal to surrender them or to account to her for the value thereof she filed this bill.

By the cross-bill of Lawton C. Bonney, and by the cross-bills filed by Charles L. Bonney and by the guardian *ad litem* in the name of the minor children of Margaret A. and Charles L. Bonney, it was sought to set aside and impeach the alimony decree entered in the divorce proceeding. Subsequent to the commencement of this suit the same relief was sought by original bill by Charles L. Bonney, and cross-bills were filed substantially to the same effect as the

cross-bills filed in this case, by Lawton C. Bonney and upon behalf of said minors. The original bill and cross-bills in that case were dismissed as to Mrs. Bonney, Mr. Lamb, the trustee, and a bank which it was averred had some interest in the property turned over by Charles L. Bonney to his wife, Margaret A. Bonney, in settlement of alimony, upon their respective demurrers being sustained thereto, which decree of dismissal was affirmed by this court on the ground that the decree being a consent decree it could not be thus impeached, and for multifariousness. (210 Ill. 95.)

LYMAN M. PAINE, for plaintiff in error:

Duress implies involuntary action prompted by fear to which the judgment has never assented. A deed so obtained is voidable, only,—not absolutely void. A party seeking to set it aside is bound to move promptly. Any delay must be explained by clear and conclusive evidence. *Eberstein* v. *Willets,* 134 Ill. 101.

Where the party practices nothing which he has not a legal right to perform there is no duress. *Preston* v. *Boston,* 12 Pick. 14; *Fellows* v. *School District,* 39 Me. 559; *Atley* v. *Backhouse,* 3 M. & W. 633; *Stillman* v. *United States,* 101 U. S. 465.

To constitute duress, such a pressure must be brought to bear upon the person seeking avoidance of a contract as to interfere with the free enjoyment of his rights. *Rendleman* v. *Rendleman,* 156 Ill. 568; *Stover* v. *Mitchell,* 45 id. 213; *Kerting* v. *Hilton,* 152 id. 658.

An intelligent, voluntary act, however reluctantly done, cannot be avoided unless vexation and annoyance have produced a state of insanity. *Brower* v. *Callender,* 105 Ill. 88; *Hamilton* v. *Smith,* 57 Iowa, 15.

Mental incapacity, to justify the setting aside of a contract, must be such as renders the person incapable of understanding his interests. *Perry* v. *Pearson,* 135 Ill. 224.

The question in such case is whether or not the party alleged to be affected with mental weakness is capable of transacting ordinary business or of acting rationally in the ordinary affairs of life. *Lindsey* v. *Lindsey,* 50 Ill. 79; *Wall* v. *Stapleton,* 177 id. 357; *Donahoe* v. *Cricket Club,* 177 id. 351; *Willemin* v. *Dunn,* 93 id. 511.

Any act which is a benefit to one party or a disadvantage to the other is a sufficient consideration to support a contract. *Buchanan* v. *Bank,* 78 Ill. 500; *Burch* v. *Hubbard,* 48 id. 164.

When different instruments are executed as the evidence of one transaction or agreement they are to be read and construed as constituting but a single instrument. *Wilson* v. *Roots,* 119 Ill. 379.

THOMAS S. McCLELLAND, for defendant in error:

A release obtained through fear, intimidation and fraud will be set aside. *Bane* v. *Detrick,* 52 Ill. 26; *Parmentier* v. *Peter,* 13 Ore. 121; *Kocouret* v. *Marak,* 54 Tex. 501; *Harris* v. *Carmody,* 131 Mass. 51; *Tapley* v. *Tapley,* 10 Minn. 478; *Line* v. *Blizzard,* 70 Ind. 23; Bishop on Contracts, sec. 715; *James* v. *Roberts,* 18 Ohio, 548; *Tobey* v. *Green,* 14 R. I. 618; *Bank* v. *Bryan,* 62 Iowa, 42; *Thurman* v. *Burt,* 53 Ill. 129.

Where a party seeks relief from an obligation on the ground of duress *per minas,* regard must be had to age, sex and condition, and if the threats were such as were calculated to deprive one of his will, he will be relieved from liability even though the threats were not of such a character as would produce a like effect on a firm and courageous man. *Jordan* v. *Elliott,* 15 Cent. L. J. 232.

A wife may avoid a deed executed by her under threats from her husband that he would abandon her if she did not sign it. *Line* v. *Blizzard,* 70 Ind. 23.

Duress is an unlawful physical force applied or threatened to the person of a party or the person's child, through

constraint of which he consents to what he otherwise would not. Bishop on Contracts, sec. 715.

A court of equity will interfere if the party executing the instrument is liable to be imposed on, if any undue means are used, or if there is the least speck of imposition or a scintilla of fraud. *Mott* v. *Mott,* 49 N. J. Eq. 192.

Reducing the agreement to writing does not aid one committing the fraud. *Boyce* v. *Grundy,* 3 Pet. 119.

The proposition that an instrument affecting the rights of property, executed without consideration, avoids same has not been questioned so far in this case. As a rule of law it probably requires no citation of authorities. The principle is elementary.

Mr. JUSTICE HAND delivered the opinion of the court:

The first reason urged as ground for affirming the judgment of the Appellate Court is, that Margaret A. Bonney was in such mental condition that she did not understand the nature of the transaction in which she was engaged at the time she executed said release on the 19th day of December, 1899, and that for want of mental capacity to execute said release it was void. This contention is without force. All of the witnesses who testified upon the subject stated that Mrs. Bonney was competent to do business at the time she signed said release, and Mrs. Bonney admitted she fully understood the import of the release when she signed it. The contention, therefore, that Margaret A. Bonney was without sufficient mental capacity to release the liability of Lawton C. Bonney to her upon the bonds belonging to her which he had converted to his own use can not be sustained.

It is next contended that said release was obtained by duress. The law is, a party in his right mind and in full control of his faculties, who understands what he is doing and has full power to sign a paper or refuse so to do, if he sign the paper does not sign it under duress. (*Kerting*

v. *Hilton*, 152 Ill. 658.)    Applying the principle thus an-
nounced to the facts of this case, we think it clear that
Margaret A. Bonney was not acting under such duress at
the time she executed said release as will enable her to
avoid the release on the ground of duress.   She was per-
fectly sane, and admits she read the release, understood its
legal import and signed it freely and voluntarily.   Clearly,
the release was not executed under duress.   *Eberstein* v.
*Willets*, 134 Ill. 101; *Rendleman* v. *Rendleman*, 156 id.
568; *Stover* v. *Mitchell*, 45 id. 213.

It is lastly contended that the release was made with-
out consideration, is therefore void, and should be set aside.
The principle is elementary that an instrument affecting the
rights of property, executed without consideration, has no
binding force or effect in law and may be avoided as be-
tween the parties.   The evidence is conflicting as to whether
or not the liability of Lawton C. Bonney for the return
of said bonds to Margaret A. Bonney, or his liability for
the value thereof, was talked of during the negotiations
which led up to the divorce proceeding and the agreement
as to alimony.   The great weight of the evidence is that it
was not then taken into consideration, and it is not claimed
by anyone that the surrender of her right to said bonds
or a release of Lawton C. Bonney for having converted
them to his own use was mentioned to Margaret A. Bon-
ney until the question of alimony had been fully settled and
it was agreed that she should take a divorce and she was
starting to the court house for the purpose of having a
hearing in the divorce proceeding.   We think it clear, there-
fore, that the matter of Lawton C. Bonney's liability for
said bonds and the agreement of Charles L. Bonney to pay
said money and deliver said promissory notes and convey
said real estate to a trustee for the use of said Margaret
A. Bonney in settlement of alimony were two distinct trans-
actions, and that Mrs. Bonney never received anything from
Lawton C. Bonney, or anyone else, for the release of the

liability of Lawton C. Bonney to surrender to her said bonds or to account to her for their value. Charles L. Bonney, in connection with his brother, Lawton C. Bonney, had stripped Margaret A. Bonney of the entire estate which she received from her father, with the exception of said bonds, which on the 19th day of December, 1899, were of about the value of $9000, and we think it clearly appears from the evidence, at the time the alimony question was settled between Margaret A. Bonney and her husband she expected the bonds would be returned to her, and in addition thereto that she would receive from Charles L. Bonney the amount of alimony which he had agreed to pay her or set aside for her use. Lawton C. Bonney had represented to Margaret A. Bonney that he had said bonds in his possession and that he would return them to her when the sale of the railway took place, which sale he said would be consummated within a few days, when the bonds would be guaranteed by the purchaser, and that Margaret A. Bonney had no notice that he had or claimed to have converted the bonds to his own use until she had settled with her husband the question of alimony and felt she could not well recede from the divorce proceedings, when Lawton C. Bonney sprung upon her the release and insisted that she execute the same. Upon the entry of the divorce decree Margaret A. Bonney immediately started for Europe, where her daughters were, and where she remained until the following summer, and upon her return she took active steps at once to recover the bonds. We are of the opinion, therefore, that the Appellate Court correctly held that the decree of the circuit court dismissing Margaret A. Bonney's bill should be reversed and that a decree should be entered upon the case being remanded, in accordance with the findings of the master.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*