CHRISTIAN EBERSTEIN

*v.*

MARTIN WILLETS *et al.*

*Filed at Ottawa June 12, 1890.*

1. COMPOUNDING A FELONY—*deed made in pursuance thereof—bill to set aside the deed.* In order to set aside a conveyance of land on the ground it was executed to compound a felony, the bill must allege that the deed sought to be avoided was executed in consideration of an agreement not to prosecute.

2. DURESS—*bill to set aside deed—what questions involved.* On bill to set aside a deed on the simple ground of duress, no question of the parties being *in pari delicto* can arise, but it is only material to inquire whether the act in question was the free and voluntary act of the party seeking to set it aside, or is it one prompted by fear, to which his judgment never assented.

3. SAME—*laches—delay in seeking to avoid a deed.* Where a party seeks to avoid his deed in a court of equity on the ground of duress, he is required to move promptly, and must not sleep on his rights. In case of a delay on the part of the party pleading duress, clear and conclusive evidence will be required to explain the failure to proceed promptly. A delay of over three years is such *laches* as, unexplained, will bar relief in equity.

4. If one really guilty of larceny, executes a deed for land, in the expectation it will have the effect to prevent a criminal prosecution, though no promise is given, and the party, though under arrest, is allowed to see and freely consult with his wife and his attorney, and he gives possession under his deed, after release, and takes no steps to avoid it until after the statute has barred any prosecution against him, and no undue means are used to procure the deed, it will not be set aside.

5. SAME—*deed made under duress—not void, but voidable—ratification.* A deed obtained by duress is voidable, only,—not absolutely void; and it may not be avoided after ratification when the duress has been removed.

6. ALLEGATIONS AND DECREE—*must correspond.* In a court of chancery, the relief granted must be in conformity with the allegations of the bill, and it will never be granted in opposition to those allegations.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Messrs. Miller, Leman & Chase, and Mr. F. W. Jaros, for the appellant:

On the question of duress under imprisonment or process, see Chitty on Contracts, (11th Am. ed.) 271 ; *Hackett* v. *King,* 6 Allen, 58 ; *Bane* v. *Detrick,* 52 Ill. 19 ; *Duke de Cadaval* v. *Collens,* 4 A. & E. 858 ; *Severance* v. *Kimball,* 8 N. H. 508 ; *Richardson* v. *Duncan,* 3 id. 508 ; *Heckman* v. *Schwartz,* 20 Wis. 267 ; *Fay* v. *Oatley,* 6 id. 421 ; *Shaw* v. *Spooner,* 9 N. H. 197 ; *Clark* v. *Pomeroy,* 4 Allen, 534 ; *Williams* v. *Bailey,* L. R. 1 H. L. 200.

The principle that where the parties to an illegal transaction are *in pari delicto,* the court will not aid either party, does not apply to a case like this, where the parties are not *in pari delicto,* or where there was such imposition, oppression or duress as in this case. *Keith* v. *Buck,* 16 Bradw. 121 ; *Baehr* v. *Wolf,* 59 Ill. 470 ; *Bothwell* v. *Brown,* 51 id. 234 ; *Schommer* v. *Farwell,* 56 id. 542 ; *Williams* v. *Bailey,* L. R. 1 H. L. 200 ; *Whitmore* v. *Farley,* 43 L. T. (N. S.) 192 ; *Osbaldiston* v. *Simpson,* 13 Sim. 513 ; *Smith* v. *Cuff,* 6 M. & S. 160 ; *Smith* v. *Bromley,* 2 Dougl. 696 ; *Osborne* v. *Williams,* 18 Vt. 379 ; *Porter* v. *Jones,* 6 Coldw. 313 ; 1 Story's Eq. secs. 300, 695.

The defense of *bona fide* purchaser can not avail any of the defendants in this case, for the reason the deed from Eberstein to Martin Willets was obtained by perversion of criminal process and to compound a criminal offense, and was contrary to the Criminal Code. Rev. Stat. chap. 38, pars. 69, 183.

Paragraph 69 of the Criminal Code provides as follows : "Whoever takes money, goods, chattels, lands, or other reward or promise thereof, to compound any criminal offense, shall be fined in double the sum or value of the thing agreed for or taken ; but no person shall be debarred from taking his goods or property from the thief or felon, or receiving compensation for the private injury occasioned by the commission of any such criminal offense." Very plainly, this transaction, and

the obtaining of this deed from Eberstein, were contrary to the provisions of this act. *Shenk* v. *Phelps*, 6 Bradw. 612; *Fay* v. *Oatley*, 6 Wis. 42; *Bowen* v. *Buck*, 28 Vt. 309; *Bane* v. *Detrick*, 51 Ill. 19.

Paragraph 183 of the Criminal Code provides as follows: "All judgments, mortgages, assurances, bonds, notes, bills, specialties, promises, covenants, agreements, and other acts, deeds, securities or conveyances given, granted, drawn or executed contrary to the provisions of this act, may be set aside and vacated by any court of equity, upon bill filed for that purpose by the person so granting, giving, entering into or executing the same, or by his executors or administrators, or by any creditor, heir, devisee, purchaser, or other person interested therein, or, if a judgment, the same may be set aside on motion of any person aforesaid, on due notice thereof given."

Messrs. WILSON & MOORE, for the appellees Louisa Simons and Winkelman:

A contract made under duress is not void, but voidable, because it may be ratified. 1 Parsons on Contracts, 446; Wharton on Contracts, sec. 149; *Deputy* v. *Stapleford*, 19 Cal. 303; *Somes* v. *Brewer*, 2 Pick. 203.

Where the only coercion is the fear of the consequences of one's own criminal act, there is no duress. *Felton* v. *Gregory*, 134 Mass. 177; *Smillie* v. *Smith*, 34 N. J. Eq. 51.

Complainant has lost his right to relief, if he ever had any, by *laches*. *Cox* v. *Montgomery*, 36 Ill. 396; *Bush* v. *Sherman*, 80 id. 160; *Howe* v. *South Park Comrs.* 119 id. 117; *Hoyt* v. *Pawtucket Inst. for Savings*, 110 id. 390.

Mr. JESSE HOLDOM, for the appellee Newbury:

Where the party threatens nothing which he has not a legal right to perform, there is no duress. *Fellows* v. *School District*, 39 Me. 559; *Preston* v. *Boston*, 12 Pick. 14; *Atley* v. *Bockhour*, 3 M. & W. 633; *Stillman* v. *United States*, 101 U. S. 465.

A court of equity will apply the rule of *laches* according to its own idea of right and justice. *Brown* v. *County of Buena Vista*, 5 Otto, 559.

Imperfect rights must be asserted with vigilance. *Brobst* v. *Brock*, 10 Wall. 519.

Parties under no disability, who for many years sleep upon their rights, can not enforce them through a court of equity. A court of equity, acting on sound discretion, will refuse to aid a party who does not act in good faith and with reasonable diligence. *Brown* v. *Wathen*, 1 How. 189.

Long acquiescence and *laches* by parties out of possession can not be excused but by showing some actual hindrance or impediment of those in possession which will appeal to the conscience of the court, and especially where there is knowledge of the claim of those in possession. *Wagg* v. *Beird*, 7 How. 234.

So in the case at bar, Eberstein was fully cognizant of the rights of the parties in possession of this property, and as his personal friends were still tenants in possession, he could at all times have ascertained the status of the claim of title. Where a party seeks to enforce a claim in equity who has for a long time acquiesced in the assertion of adverse rights, he should set up specifically the impediment to an earlier prosecution of his suit. *Laches* and delay must be duly accounted for before equity will interpose. *Gould* v. *Gould*, 3 Story, 516.

Unreasonable delay on the part of the plaintiff must be accounted for by good and sufficient reasons, and not statements of imaginary difficulty or unreal obstacles. *Fisher* v. *Burdict*, 1 Curtis, 220.

Where one who has sufficient knowledge of the facts to put him on inquiry, permits another to hold property and create liens thereon, or superior equities in favor of innocent third parties, he must suffer the loss occasioned by his *laches*. See *Babcock* v. *Pettibone*, 12 Blatchf. 354; *Murphy* v. *Painter*, 11 Ill. 333.

Mr. P. L. SHERMAN, and Mr. WILLIAM B. BRADFORD, for the appellees the Willets.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The substance of the allegations of the bill is, that the appellant was arrested by a private detective, on a warrant issued by a justice of the peace, at the instance of Henry Willets and Martin Willets, charging him with the larceny of certain carriage trimmings belonging to them, of the value of sixteen dollars, and that instead of being taken before the justice of the peace issuing the warrant, he was taken to a private room of the detective, and there detained, without bail, for two days and nights; that while thus detained in the room of the detective, his mind being so troubled by recent domestic afflictions, and he being so weak, mentally and physically, that his fears were easily operated upon, he was terrorized by being made to believe that certain innocent acts of his were incapable of explanation by him except upon the theory of his guilt, and that such acts would be given in evidence against him, and that this, with other evidence which it was represented would be produced, would be sufficient to convict him of the larceny wherewith he was charged,—that he should not be released from custody and restored to his liberty unless he would execute a deed to Martin Willets for sub-lots 4 and 5 of lot 1, in block 46, in the city of Chicago, and that he should be released from custody upon executing such deed; that he was not guilty of the crime of larceny wherewith he was charged, but being thus weak in mind, and terrorized, he had no freedom of will, and he executed the deed required in order that he might be released from arrest and restored to his liberty.

It is elementary, and we need not pause to cite authorities to sustain it, that the relief granted must be in conformity with the allegations of the bill, and that it will never be granted in opposition to those allegations. It is therefore unnecessary

to inquire, here, whether the evidence shows that the deed sought to be set aside was executed to compound a felony. In such case it must be alleged that a felony was committed, and that the instrument sought to be set aside was executed in consideration of an agreement not to prosecute it. (Wharton on Contracts, sec. 483; *Swope* v. *Jefferson Fire Ins. Co.* 93 Pa. St. 253.) In that case the question may arise whether the parties are *in pari delicto.* (*Haynes* v. *Rudd,* 102 N. Y. 392.) But no such question can be relevant here. Here it is only material to inquire, was the act in question the free and voluntary act of the party seeking to set it aside, or was it one prompted by fear, to which his judgment never assented. *Whitefield* v. *Longfellow,* 12 Me. 126; *Smilie* v. *Smilie,* 32 N. J. Eq. 51; *Felton* v. *Gregory,* 130 Mass. 177.

The evidence is sufficient to authorize the chancellor to believe, as he evidently did believe, that appellant was guilty of larceny as charged, and that the deed was freely and voluntarily executed, in the expectation that it would have the effect to cause an abandonment of the criminal prosecution. Henry and Martin Willets were, and had been for many years, engaged in the business of manufacturing carriages, in Chicago. Appellant was a carriage trimmer, and worked for them, as such, from 1858 until his arrest, in October, 1884. He was in the habit of doing work out of the usual hours of labor, both for the Willets and for other parties. For this purpose he had a shop fitted up in the basement of his residence, and to it he was accustomed to take, with the consent of the Willets, material upon which to work. Under guise of taking such material, he was, from time to time, in the habit of taking from their shop other material not needed for their work, which he worked up and sold to other parties. The Willets caused appellant to be arrested by a private detective, on a warrant issued by a justice of the peace, charging him with larceny. Mooney, the private detective, testified that he did not take appellant before the justice of the peace issuing the

warrant, because appellant requested that he should not be; that appellant was anxious that the matter should not be made public in any way; that appellant wanted to see his lawyer and his wife, and was anxious to settle the matter with the Willets. It is true, appellant, in his testimony, contradicts this; but we hardly feel warranted in saying that the chancellor erred in believing Mooney.

Appellant's wife was brought to him soon after his arrest, remained with him as long as she desired, then went home, and returned to him the next day, with his lawyer, Mr. Burke. One of the Willets had an interview with appellant before he saw his lawyer, and it was known to appellant when his lawyer came, that claim was made on behalf of Willets that he had stolen property from them, amounting to several thousand dollars. Mr. Burke testified, among other things, that in his interview with appellant, appellant said he had not stolen so much from the Willets as they claimed; that witness replied to appellant that that would make no difference on the question of punishment, provided the amount he had stolen exceeded fifteen dollars in value; that witness also informed appellant, that if he were convicted and sent to the penitentiary, it would not prevent the Willets from proceeding against his property for the amount he had stolen from them, and that appellant then said, "Well, let the property go." The deed was acknowledged, in due form of law, before a notary public, and nothing then transpired to show that appellant was not acting voluntarily. There is no evidence that the advice given by Burke to appellant was not honestly and conscientiously given, or that any impediment then existed to a fair and legal trial, or that appellant desired such trial. The question with appellant was, seemingly, not how to get rid of that imprisonment, but how to avoid a prosecution for larceny.

When appellant was released from imprisonment, he and his family were still in possession of the property, and they remained in possession until the evening of the day after his

---

---

release. Nothing prevented him, after his release, from retaining possession, if his deed was in fact executed under duress. He had the advice of counsel. He was then a free man. He still had his property. His possession was notice to the world of the rights that he claimed in the property, and no one could have dispossessed him against his will. His abandonment of the property could not, therefore, have been caused by duress, but was purely voluntary. Moreover, as a part of the transaction in which the deed was executed, Eberstein's wife conveyed another piece of property to a third party, to obtain money to pay Willets, leaving a balance to herself. For that balance she obtained the check of Burke for $1000, and this check was collected by Eberstein from Burke on the day after his release. These circumstances, all taken together, may be regarded as a ratification of the execution of the deed. *Bissett* v. *Bissett,* 1 Har. & McH. 211.   See, also, *Crowell* v. *Gleeson,* 10 Me. (1 Fairf.) 332; *Somes* v. *Brewer,* 2 Pick. 203.

But if it shall be admitted that the deed was obtained under duress, it was voidable, only,—not absolutely void. (*Deputy* v. *Stapleford,* 19 Cal. 302; *Bozeman* v. *Freeman,* 68 Ga. 278; *Rogers* v. *Adams,* 66 Ala. 602; *Mindery* v. *Whittemore,* 15 Neb. 647.) And where a party, in a suit in equity, relies upon duress as a ground for avoiding a deed, he is bound to move promptly, and must not sleep on his rights. (6 Am. and Eng. Ency. of Law, p. 88.)   Where there has been a delay on the part of the party pleading duress, clear and conclusive evidence will be required to explain the failure to proceed. *Lyon* v. *Waldo,* 36 Mich. 343; *Hunt* v. *Hardwick,* 68 Ga. 100.

This deed was executed on the 17th of October, 1884. The present bill was not filed until the 11th of November, 1887. It would seem quite significant that at the last named date the bar of the Statute of Limitations had become complete as against any indictment for the larcenies wherewith appellant was charged. On the evening that appellant abandoned his property, he left Illinois for the State of Michigan, intending

not to return, but failing to get work in that State, he returned to Chicago within about two weeks. He then acquired another home in Chicago, went to work again at his trade, purchased and paid for property, and did no act, until the filing of this bill, to disavow his deed. Meanwhile, Willets had mortgaged the property to one party to secure a debt, and sold and conveyed the fee to another, both being *bona fide* purchasers without notice of appellant's claim.

Appellant attempts to explain his delay in disavowing his deed, by his mental weakness, and his inability to employ counsel by reason of his poverty. Neither claim is made out by satisfactory evidence. It is shown that he worked at his trade continuously, earning three dollars a day; and, besides this, he or his wife had the $1000 in money which he had collected from Burke. No instance is pretended of an attempt to employ counsel, and a failure by reason of his poverty. He and his family testify to his being in a distressed and highly excitable condition, mentally; but it is shown that he made his own contracts and purchased property, after as before the making of the deed. The fears of arrest to which they testify he was subject, seem to have lasted no longer than the period of limitation within which he could have been prosecuted for the larcenies from the Willets. We think the delay in bringing the suit inexcusable, and such as to preclude a decree cancelling the deed. *Lyon* v. *Waldo, supra.* See, also, *Cox* v. *Montgomery,* 36 Ill. 396; *Bush* v. *Sherman,* 80 id. 160; *Hoyt* v. *Pawtucket Inst. for Savings,* 110 id. 390; *Howe* v. *South Park Comrs.* 119 id. 117.

The decree is affirmed.

*Decree affirmed.*