## GUINN *v.* SUMPTER VALLEY RAILWAY CO.

(127 Pac. 987.)

**Contracts—"Duress."**

1. Duress exists when one is induced by another's unlawful act to perform some act under circumstances depriving him of the exercise of free will.

**Deeds—Validity—Sufficiency of Consideration.**

2. A deed given to secure a payment for property misappropriated is valid as to the wrongdoer, though executed under threat of lawful arrest.

**Deeds—Duress—Ratification.**

3. Where a woman, after executing a deed under duress as security for a debt arising from a criminal misappropriation of property by her husband, gives a quitclaim deed merely to avoid the necessity of foreclosure proceedings, and not through any threats of her husband's prosecution made or communicated at that time, and, by an unexplained delay in objecting, acquiesces in each of the transactions for nearly three years and until the party to whom the quitclaim deed was given has died, she thereby ratifies the entire transaction and cannot avoid the conveyances.

**Contracts—Duress.**

4. Duress to avoid a contract must be the act of the adverse party himself or his agent, or must be imposed with his knowledge and taken advantage of by him for the purpose of obtaining the agreement.

**Contracts—Duress on Third Persons.**

5. The rule that a person will not be regarded as under duress who contracts to relieve another than himself does not apply where the subject of the duress is the wife, husband, parent, child, or other near relative.

From Baker:    WILLIAM SMITH, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit in equity by Eva G. Guinn against the Sumpter Valley Railway Co., a corporation, David Eccles and Grant Geddes, for the cancellation of two deeds to certain lots.  From a decree in favor of defendants, plaintiff appeals.

The plaintiff asserts that the conveyances were made solely by reason of fear, coercion, and restraint, contrary to her will, and upon the demand of the defendants, in order to save her husband, Louis A. Guinn, an employe of the defendant corporation, from being prosecuted and imprisoned for larceny as threatened by officers of the corporation.  The gist of the allegations is denied by the defendants.

The facts in the case are substantially as follows: David Eccles was president of the Sumpter Valley Railway Company, and Grant Geddes, now deceased, an officer of such defendant corporation.  Plaintiff was the owner in fee in her own right as her separate property, and in possession of lots 1 and 2, in block 38, of Jackson's addition to the city of Baker, county of Baker, State of Oregon.  On the 28th day of June, 1907, David Eccles accused Louis Guinn of having converted· personal property of the Sumpter Valley Railway Company to his own use to the amount of $705.38, while purchas-

ing and disbursing agent of the company, by charging the defendant corporation with brasses, for use upon the axles of the cars, which the company did not receive, the value of scrap iron sold by him, and 20 sacks of coal valued at $25, and also upon the joint liability of Guinn and one Swinger in certain matters, aggregating some $392, half of which was deemed to be the liability of Guinn, making the sum total of the misappropriations $705.38. Eccles caused Guinn to come to his home and accused him of the above peculations, in which Guinn denied any participation. The two men met again on the evening of the 29th, when Eccles demanded that Guinn pay the $705.38. Guinn expressed a desire to pay the same, and interviewed his wife, telling her the circumstances and stating, that in order to avoid arrest and criminal prosecution, as they had no other property, it would be necessary to deed the above-described real estate to the Sumpter Valley Railway Company or its representatives. Plaintiff was shocked and overcome by the circumstances, and dreaded to lose the only home that she had ever had; but, in order to avoid the prosecution of her husband, they deeded to the company lots 1 and 2 in block 38 as security for the payment and restitution of the $705.38. On the 29th day of August, 1907, plaintiff and her husband quitclaimed unto Grant Geddes, as trustee for the railway company, lots 1 and 2 in block 38, and at the same time, and for the consideration of $195, conveyed to Geddes, as such trustee, lot 3 in block 38, the property of Louis A. Guinn. The value of the three lots was about $900.

This suit was commenced on the 19th day of February, 1910. Guinn's unlawful conversion of the property had continued from time to time from February, 1906, to June, 1907. The trial court found that the two conveyances of lots 1 and 2 were executed under duress, but held that, by reason of the plaintiff's inexcusable

delay in the commencement of the suit for an unreason-
able length of time, she was guilty of laches and pre-
cluded from relief.                    AFFIRMED.

For appellant there was a brief and an oral argument
by *Mr. Gustav Anderson.*

For respondent there was a brief over the names of
*Mr. John L. Rand* and *Mr. A. A. Smith,* with an oral
argument by *Mr. Smith.*

MR. JUSTICE BEAN delivered the opinion of the court.

It should be stated that this complaint does not allege
that the conveyances in question were executed for the
purpose of compounding a felony. Neither does it allege
any felony to have been committed by Louis A. Guinn,
but on the other hand avers that he was unjustly accused.
Neither of the officers of the company made any state-
ment to Mrs. Guinn as to the circumstances. Her
information was obtained from her husband.

David Eccles testified, in effect, that, after making an
investigation and finding the discrepancies, he called
Guinn to his house and asked him how many brasses
had been charged to the company which were not re-
ceived. At first Guinn denied the charge, but afterwards
told him the different dates and the number of instances
when 20 brasses would be received, and invoiced at the
Baker Iron & Supply Company's office at 30 or 40. Eccles
stated that he told Guinn to go home and think up the
other items, and that would be all right with him if he
told the truth. On the next evening Guinn told him of
more instances, and they agreed upon the number and
weight of the brasses, and settled as to their value, at
the purchase price, making the amount $705.38, after
deducting $196, one-half of the amount, which Guinn
had divided with Swinger, Eccles' brother-in-law, who
was equally concerned in the transaction. Guinn said

that he would like to pay if he could, and would try and sell his house, and wanted to know if the company would take it. Eccles said that he told Guinn that they did not want his house, and that the best thing for him to do would be to pay the money, for he did not want to make any stir or hurt either his or Swinger's name. Guinn proposed to give them a deed of the house, like a mortgage, until he could sell it, and the company gave him 90 days in which to make the transaction and get all he could. It appears from Eccles' testimony that he did not want to expose Guinn or anybody else, and that nothing more was said about prosecuting Guinn; and that Swinger paid his half.

The testimony does not show that the prosecution of the offense, committed by Guinn, was restrained in consideration of the conveyances, but rather in order to save any publicity of the matter as to Swinger. It would seem that Guinn must have understood this, and that his conversation with Eccles did not wholly warrant the statement he made to his wife that Eccles would send him to the penitentiary. Whatever coercion of Mrs. Guinn, in the execution of the conveyances, is chargeable to the defendants is due to their adopting the transaction by accepting the deed which her husband had procured her to execute. This is indicated by the statement of Geddes, who was cognizant of the transaction, at the time the deed was delivered, that "this is in your wife's name."

1. A comprehensive definition of duress is expressed by Mr. Justice COOLEY in *Hackley* v. *Headley,* 45 Mich. 569, at page 574 (8 N. W. 511, 512) : "Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." See 10 Am. & Eng. Ency. Law (2 ed.) 321. Duress *per minas* exists when a person is induced to perform an act to avoid a threatened and impending calamity. 10 Amer.

& Eng. Ency. Law (2 ed.) 324. It is said that the fear of imprisonment is sufficient to constitute duress, "for the law has a special regard for the safety and liberty of a man." To constitute duress by a threat of imprisonment for a supposed crime, there must be a threat importing an illegal wrongful imprisonment, or a resort to a criminal prosecution for an improper purpose or from a wrongful motive, accompanied by such circumstances as would indicate a prompt or immediate execution of the threat. 9 Cyc. 446. The courts differ on the question as to whether threatened lawful imprisonment constitutes duress. If the threatened imprisonment is unlawful, duress exists. If the threat is of lawful imprisonment but it is unlawfully used to obtain the contract, duress exists. Page, Contracts, § 252.

2. As far as Louis A. Guinn is concerned, the transaction was legal and proper. The defendants had a lawful right to collect pay for the property Guinn had misappropriated. *Hilborn* v. *Bucknam,* 78 Me. 482 (7 Atl. 272: 57 Am. St. Rep. 816). It was held in *Gregor* v. *Hyde,* 62 Fed. 107 (10 C. C. A. 290), that a threat of lawful arrest of a person justly amenable to criminal prosecution is not ground for cancellation of a deed, though it was executed under pressure of such threat; there being no circumstances of oppression or fraud, and no objection made for nearly three years.

3. The consideration for the deed was the just debt of Guinn, husband of palintiff. The only question is whether or not there was undue influence exerted upon Mrs. Guinn, in the matter of the execution of the conveyances, so that her will was overcome. She had a right, if she saw fit, to secure her husband's indebtedness. She could not be compelled to do so.

4. Duress, to avoid a contract, must be the act of the adverse party himself or his agent, or must be imposed with his knowledge, and taken advantage of by him for

the purpose of obtaining the agreement.  9 Cyc. 453; *Green* v. *Scranage,* 19 Iowa, 461 (87 Am. Dec. 447).

In *Compton* v. *Bunker Hill Bank,* 96 Ill. 301 (36 Am. Rep. 147), a wife executed and acknowledged a deed conveying her land to a bank, whose money her husband had embezzled to a large amount, to save him from arrest and criminal prosecution.  It appeared that the wife was urged to do this by her husband and brother, who informed her that if she would make the conveyance the bank would not prosecute.  The bank had no knowledge of such representations being made to induce the execution of the deed, and authorized none to be made, and none of its officers had any conversation with the creditor on the subject.  It was held that a court of equity would not set the deed aside for fraud, duress, or imposition.

It was held in *Schultz* v. *Catlin,* 78 Wis. 611 (47 N. W. 946), that threats of criminal prosecution made to a brother, and by him at plaintiff's request communicated to his sister in order to secure her signature to a note to compound a felony, constituted duress of the sister for which she might avoid the note.

In *Giddings* v. *Iowa Savings Bank,* 104 Iowa, 676 (74 N. W. 21), defendant demanded of a husband a mortgage on his homestead which was in his wife's name, claiming that he was a defaulter, and threatening criminal prosecution unless he gave the mortgage.  Evidence of the conversation between husband and wife that he told her of the interview was held admissible in an action by them for possession of the mortgage on the ground of duress.  It was also held that, where the fears or affection of a wife are worked upon through threats made against her husband, and she is induced thereby, against her will, to convey her property to secure his debt, there is duress as to her, even though the debt was valid and the threat was of lawful prosecution for a

crime that had been committed by the husband, where the bank officers knew that the deed to the homestead must be signed by the wife.

5. As a rule, an agreement cannot be avoided because duress was imposed on a third person. In other words, the law does not regard one person as under duress who enters into a contract to relieve another person and not himself. However, there is an exception to the general rule, where the subject of the duress is the wife, husband, parent, child, or other near relative. 9 Cyc. 453.

Plaintiff testified to the effect that her husband told her that Eccles required him to pay the $705.38, and that, if he did not do so, he would have to arrest him and send him to the penitentiary; that her husband had no money, and asked her if she would be willing to sign over the home in payment; that the affair made her sick, but that she signed the deed in order to avoid the disgrace and dishonor of having her husband sent to the penitentiary, though she was very reluctant about doing so. If the conclusion of the trial court that the first deed was executed by plaintiff while she was under duress and was not of her own free will was correct, we think the transaction was ratified by Mrs. Guinn by the execution of the quit-claim deed August 29, 1907, and the delay in disaffirming the conveyance for nearly three years. The person subjected to duress may see fit to ratify the transaction, and may do so after having become competent to contract. Thus a deed given under duress may be ratified, as by a quitclaim, or by acquiescence for an unreasonable time after an opportunity to avoid the contract. Page, Contracts, § 269; *Miller* v. *Minor Lumber Co.*, 98 Mich. 163 (57 N. W. 101: 39 Am. St. Rep. 524). Where a deed has been executed under duress, and an unreasonable length of time has elapsed after the execution of the deed before steps are taken to set the same aside, the transaction is ratified.

*Eberstein* v. *Willets,* 134 Ill. 101 (24 N. E. 967) ; *Myers* v. *Grey* (Sup.) 122 N. Y. Supp. 1079. Where a deed is alleged to have been executed under duress and is attempted to be set aside on that ground, the party so attempting to set aside the same must act promptly. If he remain silent for an unreasonable length of time, or recognize the validity of the contract, he will be held to have elected to waive the duress and ratify the contract. 10 Am. & Eng. Ency. Law (2 ed.) 337; *Myers* v. *Grey,* 122 N. Y. Supp. 1079; *Royal* v. *Goss,* 154 Ala. 117 (45 South. 231). Where there has been delay in bringing an action to set aside a deed on the ground of duress on the part of the party pleading duress, clear convincing evidence will be required to explain the failure to proceed. *Lyon* v. *Waldo,* 36 Mich. 345; *Eberstein* v. *Willets,* 134 Ill. 101 (24 N. E. 967).

The conveyance of the two lots on August 29, 1907, at the same time of the conveyance of lot 3 for $195, appears in all its features to have been an ordinary transaction. Mr. Guinn obtained legal advice in regard to the matter before the execution of the first deed, and Mrs. Guinn, prior to the execution of the quitclaim deed, had ample time to determine whether or not it was her desire to secure her husband's indebtedness. There was no haste exhibited in the second transaction, and no threats made or communicated at that time. After that she acquiesced in each of the transactions for nearly three years. In the meantime Geddes, one of the officers of the company who purchased lot 3 and obtained the quitclaim deed, had died. Mrs. Guinn did not explain her delay. True she said that, at the time of signing the quitclaim deed, she was under the same fear as when the first deed was executed, but that is at most a conclusion. The delay in bringing suit was attempted to be explained by Louis A. Guinn on cross-examination. But, while he appears to be the moving spirit in the disaffirm-

ance of the contract, the state of his mind at the time of its execution is not the question for determination. Mrs. Guinn did not act promptly in taking steps to set aside the deed. Her long acquiescence in the arrangements was inexcusable. It appears that the quitclaim deed was intended by Mrs. Guinn to render foreclosure proceedings unnecessary.

The decree of the lower court will therefore be affirmed.                                    AFFIRMED.