Submitted on briefs September 25, reversed and remanded October 3, rehearing denied December 18, 1917.

## KOHLER & CHASE CO. *v.* SAVAGE.*

(167 Pac. 789.)

**Bills and Notes—Duress—Threat of Prosecution.**

1.    Lawfulness of the prosecution of a child threatened by his creditor if his father does not secure his debt does not save from duress the note of the father so given as security.

**Bills and Notes—Duress—Removal—Instructions.**

2.    An instruction, in an action on a note given by defendant to secure a debt of his son under threat of prosecution of the son, that if the jury find that the duress was removed and thereafter defendant voluntarily made a payment on the note that would operate to remove the defense of duress is defective in not stating how or when the duress might be removed, so that from the mere payment the jury might find the removal, when, possibly, the constraint continued till limitations against prosecution expired.

[As to ratification of contract voidable for duress, see note in Ann. Cas. 1913E, 438.]

**Pleading—Answer—Waiver of Objections—Admission of Evidence.**

3.    Evidence having been admitted without objection tending to sustain the defense undertaken to be raised by averments of the answer alleging the facts constituting the defense, the averments, though not setting forth as new matter such defense, should be treated as sufficient.

From Marion: PERCY R. KELLY, Judge.

In Banc.    Statement by MR. JUSTICE MOORE.

This is an action by Kohler & Chase Company, a corporation, against L. F. Savage and J. F. Savage to re-

---

*For a discussion of the question of contracts procured by threats of prosecution of a relative, see notes in 26 L. R. A. 48; 20 L. R. A. (N. S.) 484; 37 L. R. A. (N. S.) 539; L. R. A. 1915D, 1118.

REPORTER.

cover on a promissory note executed by the defendants to the plaintiff April 2, 1913, for $650.95, maturing in 60 days with 8 per cent interest, on account of which there had been paid $382. The complaint is in the usual form and demands judgment for the remainder due on the note and attorney's fees as provided for therein.

J. F. Savage, alone answering, admitted that plaintiff was a corporation, and alleged that on and for several years prior to April 2, 1913, L. F. Savage, a son of the answering defendant, had been and was engaged in business at Salem, Oregon, selling pianos on commission for the plaintiff, which on such day claimed he owed $650.95, money received on account of such sales, no part of which had been paid; that J. F. Savage was not financially interested in the business nor liable therefor in any manner; that on said date he was informed by the plaintiff of the failure to account for any of the money so received and notified that unless he executed a promissory note for that sum his son would be prosecuted by the plaintiff for the crime of larceny by a bailee; that believing such threat and to prevent disgrace to himself and family J. F. Savage was compelled to join in executing such promissory note, the execution of which was extorted by plaintiff's threat of such prosecution and by fraud, fear, and duress, and that he signed and delivered the note without any consideration therefor.

The reply denied the averments of the answer, and alleged that the note was executed in consideration of a postponement for 60 days of the payment of the sum so due, and that when the note was delivered the original debt was discharged. A trial of the cause resulted in a verdict and judgment for plaintiff for $392.95, the remainder due on the note, with interest at

8 per cent per annum from January 4, 1916, and the further sum of $75, as attorney's fees, and the defendant J. F. Savage appeals.

REVERSED AND REMANDED.

REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Charles L. McNary* and *Mr. B. S. Martin.*

For respondent there was a brief over the name of *Mr. Claire M. Inman.*

MR. JUSTICE MOORE delivered the opinion of the court.

W. S. Phillips, who at the time the note was executed was the plaintiff's manager at Portland, Oregon, testified that his principal, retaining the title, consigned pianos to L. F. Savage, who was authorized to sell them, retain his commission, and send the remainder of the purchase price to the plaintiff, and that such broker sold musical instruments receiving therefor $650.95 as the plaintiff's part of the money, which he converted to his own use. J. F. Savage testified that having been called by a phone message from a farm where he was living to Salem, Oregon, on the day the note was given he met W. S. Phillips, who informed him that L. F. Savage had sold pianos belonging to the plaintiff and embezzled all the money received therefor; that such manager requested the witness to sign a promissory note for the sum so appropriated; that he refused to comply with the request because he was unable to pay that amount, whereupon Mr. Phillips, referring to L. F. Savage,

"then told me the boy would be prosecuted if there wasn't something of the kind done, if I didn't sign the note, or the money wasn't coming, one way or the

other. * * A kind of dispute arose between my son and Mr. Phillips, and Mr. Phillips told my son that he was lying, and told him if he didn't quit lying he would send him to the penitentiary; that is where he ought to be anyhow; that he ought to go there from the way he was doing. * * We finally got together and I signed this note under protest, thinking the boy would be prosecuted. * * That was the terms under which I signed the note, for to save my son from prosecution. * *

"Q. Now, Mr. Savage, what was the inducement and sole cause that impelled you to execute this note and subsequently pay a part of the principal and interest?

"A. Why, to save my son from being prosecuted, was the only motive I had in it. I owed them nothing, never had owed them, nor my son, a dollar."

W. S. Phillips further testified:

"That no threat or insinuation of threat was made by him to, or in the presence of, defendant that L. F. Savage, the defendant's son, would be prosecuted or sent to the Oregon State Penitentiary, or other criminal proceedings taken against him in the event said note was not jointly executed and delivered by defendant."

Based upon this testimony an instruction was given as follows:

"Not every threat of imprisonment or of prosecution for a supposed crime will constitute duress. I charge you, gentlemen of the jury, that before the defendant J. F. Savage can avoid liability in this action on the ground of alleged threats constituting duress inducing the execution of the note, you must find from a preponderance of the evidence that such threat was made by plaintiff importing an illegal, wrongful imprisonment, or that such threat was made by the plaintiff importing a resort to a criminal prosecution for an improper purpose or from a wrongful motive, and you must futher find from a preponderance that such threat was accompanied by such circumstances as would indicate a prompt or immediate execution of the

threat.   And in case you fail to so find I charge you, gentlemen of the jury, you will find for the plaintiff and against the defendant upon this defense. * * A threat of lawful arrest of a person justly amenable to criminal prosecution does not constitute duress, and an instrument executed under pressure of such threat, there being no circumstances of oppression or fraud, is not void upon that ground."

1. Exception having been taken to these parts of the charge it is contended that errors were committed in thus instructing the jury.   The language so challenged informed the jury in effect that if L. F. Savage could be incarcerated in the penitentiary upon a conviction of the crime of appropriating to his own use the money of the plaintiff, a threat by its manager to J. F. Savage to invoke the means whereby such punishment could be inflicted was lawful and might be resorted to, even if the menace induced his father through fear of a criminal prosecution to join in executing the promissory note sued upon.   The earlier decisions upon this subject are referred to in *Guinn* v. *Sumpter Valley Ry. Co.,* 63 Or. 368, 373 (127 Pac. 987), where Mr. Justice BEAN observes:

"The courts differ on the question as to whether threatened lawful imprisonment constitutes duress. If the threatened imprisonment is unlawful, duress exists.   If the threat is of lawful imprisonment, but it is unlawfully used to obtain the contract, duress exists."

That case was a suit by a wife to set aside conveyances of her real property which she had executed at the request of her husband and upon his representations of threats of imprisonment in order to avoid his arrest and prosecution for the commission of a crime and to secure the payment of a sum of money which he had misappropriated.   The first deed so made was

intended as a mortgage, while the second was designed to transfer the equitable title so as to render unnecessary a foreclosure of the lien. The relief sought by the wife's complaint was denied on the ground of ratification and laches in that she had executed the second conveyance after having obtained knowledge of all the circumstances that induced the making of the first deed. It will thus be seen that the threats of prosecution which the husband communicated to his wife were rendered unimportant, and for that reason such menaces were immaterial whether legal or illegal. But however this may be, by giving a liberal construction to the language here quoted from the opinion in that case, the principle there adverted to could have been applied only to the defendant's husband and not to her to whom he, evidently without the knowledge of the agent of the plaintiff, communicated the threat. A person who steals from his employer may not be worthy of much respect, but the defrauded party who seeks remuneration for the loss ought not to be permitted by threats of a criminal prosecution, made to the innocent, immediate relatives of the thief, thus to extort from them payment of or security for the value of the property so unlawfully taken: *Rostad* v. *Thorsen,* 83 Or. 489 (163 Pac. 423, 987).

The testimony received at the trial of this action shows that L. F. Savage was indebted to the plaintiff in the sum evidenced by the promissory note on account of money which he had received from the sale of its pianos and converted to his own use. The question to be considered is whether a legal obligation thus created can form the basis of a threat to institute criminal proceedings against the accused, which menace when made by a creditor to induce a father or mother, husband or wife, parent or child, brother or sister to

secure or pay the debt of an immediate relative, and
thereby to prevent an execution of the threat, can be
justified as a proper means of enforcing the demand.
In a note to the case of *Embry* v. *Adams,* Ann. Cas.
1917C, 1024, 1028, it is said:

"The courts are not in accord as to whether duress
may be predicated on threats of the lawful prosecution
of a child.   Thus in some jurisdictions it is held that
a threat of lawful prosecution against a child does not
constitute duress in such a sense as to discharge the
parent from a contract induced by such threats. * *
But in other jurisdictions the rule is stated to be that
a threat made to a parent to obtain the arrest of his
child on a criminal charge constitutes such duress as
will serve to vitiate a contract, if the threat in fact
overcomes the will, without reference to the question
whether it is a threat of a lawful arrest for adequate
cause. * * It is generally held that a contract made by
a parent to stifle the criminal prosecution of a child,
where the child is in fact guilty of the offense, is
against public policy as compounding a felony and is
illegal and void."

See the cases cited in that note supporting the con-
flicting legal principles thus asserted.

It is a creditor's threat to offer in a court the neces-
sary testimony of the commission of a crime by a child,
which evidence may result in his conviction and pun-
ishment of the offense, that induces his parent to
secure the payment of or to discharge the debt and
thus to suppress the criminal prosecution.   Such
threats whether true or false tend to arouse a parent's
fears, disturb his mind, and usually to render him, for
some time, incompetent to transact ordinary business.
To permit a creditor, after communicating such threat
to a parent, to take advantage of the mental disturb-
ance which he thus creates in order to reap a profit
which he could not otherwise obtain would be sanction-

ing a resort to improper means. If a creditor, using a dangerous weapon within proper distance threatened to kill a person unless he immediately secured or paid a sum of money which he was then informed his child had embezzled, it cannot be supposed that a compliance with the demand would be upheld by a court, even if it should appear that the child had committed such offense. If, under the circumstances supposed, the life of a child were threatened in the presence of his parent unless the latter acceded to the assumed demand, a seeming assent thereto would never be regarded as a proper means of enforcing the collection or security of the sum of money which the child had unlawfully converted to his own use. The attendant conditions here imagined differ in degree only from the rule announced in the part of the charge so challenged. Upon principle, a creditor cannot be allowed to resort to a threat of criminal prosecution against a child in order to compel his father to pay or secure a sum of money, even if a crime had been committed in creating the obligation.

The lawfulness or unlawfulness of the threatened prosecution herein when made to the father is immaterial, and this being so an error was committed in charging the jury as hereinbefore stated.

2. An exception having been taken to another part of the court's charge it is maintained an error was committed in instructing the jury as follows:

"If you find in this case that the note in question was executed by the defendant J. F. Savage under duress, as alleged in his answer, but that after the removal of the duress, if it was removed, such defendant voluntarily made a payment or payments on the note, that such act on the part of J. F. Savage operates to remove the defense of duress in this case, and if you so find from a preponderance of the evidence, you will re-

turn a verdict for the plaintiff and against the defendant, so far as this defense is concerned.''

3. It will be remembered that the note was executed April 2, 1913. It appears that two payments were indorsed on the note in June of that year amounting to $282, the greater part of which sum of money was furnished by J. F. Savage. It is not disclosed by the bill of exceptions when L. F. Savage's embezzlement of the plaintiff's money began or was terminated. The offense was a felony, against the prosecution of which the statute of limitations ran in three years: Section 1377, L. O. L. Evidently the crime was not thus barred April 2, 1913, when the note was executed. Whether such limitation had expired in June of that year when J. F. Savage made partial payments on the note cannot be determined from the transcript before us, which does not purport to contain all the testimony given at the trial. It is reasonable to infer that such payments were made before the statute had run, and that the alleged duress continued, if it existed, until the limitation expired. The instruction last quoted does not inform the jury how or when the duress might be removed. No instruction was requested by defendant's counsel upon this subject, however, and hence from the mere payment of the money the jury might have inferred the duress was removed when in fact the constraint possibly continued until the statute of limitations had expired. A future instruction on this subject should be more explicit. The answer did not set forth as new matter the defense relied upon, and for that reason it is maintained by plaintiff's counsel that the defendants' pleading is insufficient in this particular, citing in support of such assertion the case of *Buchtel* v. *Evans,* 21 Or. 309 (28 Pac. 67). Though the facts constituting such defense are not pleaded

in the manner indicated, they are specifically alleged, and since no objection appears to have been made at the trial to the introduction of testimony tending to sustain the issue thus undertaken to be raised, the averments should now be treated as sufficient: *Marx v. Croisan,* 17 Or. 393 (21 Pac. 310); *Beamish* v. *Noon,* 76 Or. 415 (149 Pac. 522).

By reason of the error committed in giving the instruction first hereinbefore quoted the judgment is reversed and a new trial ordered.

REVERSED AND REMANDED.
REHEARING DENIED.