Motion to dismiss appeal denied September 27, 1932;
argued March 15; affirmed April 4, 1933

# HEIDER *v.* UNICUME
(14 P. (2d) 456, 20 P. (2d) 384)

*B. A. Kliks,* of McMinnville, for the motion.

*Frank Holmes,* of McMinnville, and *Otto W. Heider,* of Sheridan, opposed.

BEAN, C. J.   Respondents move to dismiss this appeal upon the ground, first, that the plaintiff has accepted the judgment of the lower court by paying judgment for costs.

■ It is quite a well-settled rule that if a judgment is awarded against a party, his voluntary payment of the judgment will not preclude him from maintaining an appeal unless it satisfactorily appears that the pay-

ment was not coerced and was made with a view of settlement: *Eilers Piano House v. Pick,* 58 Or. 54, 56 (113 P. 54), and cases there cited; *Duniway v. Cellars-Murton Co.,* 92 Or. 113, 115 (170 P. 298, 179 P. 561); *Edwards v. Perkins,* 7 Or. 149, cited with approval in *Moores v. Moores,* 36 Or. 261, 263 (59 P. 327)..

■ In the present case, the execution having been issued on the judgment for costs to enforce payment thereof, it does not appear that the payment thereof by plaintiff was voluntary or made with a view of settlement, but rather in lieu of an undertaking for the satisfaction of the judgment. The subject-matter of the controversy still remains after the payment of the costs. The point is not well taken.

In support of respondents' motion the following cases are cited: *West v. Broadwell,* 124 Or. 652 (265 P. 783), and *Leonard v. Bonser,* 130 Or. 618 (280 P. 340). In *West v. Broadwell* there was a motion to dismiss, and it appeared that defendants agreed to leave all the hay on the West place, for West, and West agreed to cancel the judgment for costs and Broadwell Brothers agreed to vacate the premises by October 1, 1927. A settlement of the controversy was indicated by an affidavit. That was an action to recover possession of the real property. The case differs widely from that in hand.

In *Leonard v. Bonser,* supra, the appeal was dismissed upon an uncontroverted affidavit to the effect that since the appeal was taken the controversy between plaintiff and defendants had been entirely settled, which, as we have noted, is entirely different from the present case.

We do not question the ruling in either of the two last named cases.

■ The second ground for dismissal is that the plaintiff failed to serve notice of appeal on defendant L. M. Kramer. Respondent contends that he is a proper and adverse party herein.

Section 7-503, providing for the manner of taking an appeal, subd. 1, provides in part: "If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney". L. M. Kramer not having appeared in the action, it was not required that service of notice of appeal be made upon him. He, being in default, would not be entitled to be heard if a notice of appeal had been served upon him. In so far as he is concerned the case is settled. The statute is plain and we find no authority for dismissing the appeal for want of service upon him. Under the statute an adverse party required to be served with notice of appeal should also have appeared in the action or suit.

Counsel for the motion cites the following cases:

In *Barton v. Young,* 78 Or. 215, 218 (152 P. 876), the defendants answered and the only question in the case was whether the party upon whom the notice of appeal was not served was an adverse party. The case throws no light upon the question of whether an adverse party who has not appeared in the action is required to be served with notice of appeal.

In *First Nat. Bank v. Halliday,* 98 Or. 649 (193 P. 1029), there was a failure to serve the notice of appeal upon a codefendant, "although she had appeared in the suit". Mr. Justice BURNETT very painstakingly refers to the part we have quoted. The appeal was dismissed.

*Van Lydegraf v. Tyler,* 128 Or. 236 (271 P. 740, 273 P. 719), was a suit to foreclose liens. Defendant Tyler had conveyed all his interest in the property involved prior to the improvements for which a lien was claimed and it was held unnecessary to serve notice upon him. The case is not in point.

In *Moody v. Miller,* 24 Or. 179 (33 P. 403), the facts involved were somewhat complicated and peculiar. It was a suit to foreclose a mortgage executed by Mary E. Miller upon two certain tracts of land, one of which turned out in the course of subsequent litigation to be the property of her husband, defendant Charles S. Miller, from whom she had subsequently been divorced. A decree was rendered foreclosing the mortgage. There was a subsequent judgment lien in favor of one Grant. All the defendants were duly served with summons and defendants Mrs. Miller and Grant made default. Defendant Charles S. Miller answered claiming that neither he nor his property was liable for the claim. The motion to dismiss was based upon the proposition that defendants Mrs. Miller and Grant were both adverse parties. It was held that if appellants should prevail it might increase the liability of Mrs. Miller as to the claim of her husband as she would be personally bound for the whole judgment and the entire amount become a lien upon her mortgaged property. The opinion is based upon The Victorian, 24 Or. 121 (32 P. 1040, 41 Am. St. Rep. 838), wherein it was discussed as to who was an adverse party, referring to section 537, Hill's Code, 1892, stating: "To take an appeal it is required that 'the appellant shall cause a notice to be served on the adverse party, and file the original'." The qualification of an "adverse party or parties as have appeared in the action or suit" is not contained in section 537, Hill's Code, 1892, as then considered by the court, al-

though the amendment of General Laws of Oregon, 1901, p. 77, contains the phrase ''adverse party or parties as have appeared in the action or suit''.

■ The third ground for dismissal is that the notice of appeal is insufficient under section 7-503, as it does not contain the names of the parties to the action.

Service of notice of appeal commences as follows: ''In the Circuit Court of the State of Oregon for Yamhill County, Callie B. Heider, Plaintiff and Appellant, vs. Charles Unicume, as Administrator of the Estate of Wm. Unicume, deceased, Defendant and Respondent. To, B. A. Kliks, Attorney of record for the defendant, Wm. Unicume, herein, and Charles Unicume, as Administrator of the Estate of Wm. Unicume, Deceased, substituted by order of Court herein as defendant in place and stead of Wm. Unicume, deceased''. Then follows the usual notice.

The transcript of record filed by appellant in the first instance did not disclose that Charles Unicume, administrator of the estate of Wm. Unicume, deceased, had been substituted as defendant in lieu of Wm. Unicume, deceased, and an additional transcript filed on stipulation of the parties discloses that on May 10, 1932, an order of the circuit court was duly made and entered, substituting Charles Unicume as administrator of the estate of Wm. Unicume, deceased, in place and stead of defendant Wm. Unicume, deceased.

We think the record sufficiently shows a regular substitution of defendant named and in view of the fact that such substitution was mentioned in the notice of appeal, no one could have been misled and that in this respect the record is sufficient as regards the substitution of the administrator.

The judgment could readily be identified without any extrinsic evidence by the notice.

■ Further objection is urged that L. M. Kramer is not named as a defendant. Subdivision 1 of section 7-503 also provides:

"Such notice shall be sufficient if it contains the title of the cause, the names of the parties and notifies the adverse party or his attorney that an appeal is taken to the Supreme or circuit court, as the case may be, from the judgment, order or decree, or some specified part thereof;".

The case is unlike *Lecher v. St. Johns,* 74 Or. 558, 560 (146 P. 87), where the notice of appeal did not state the judgment appealed from or that it was given in any particular action, but merely the date.

The notice in the present case is sufficient to advise the defendant that the plaintiff appeals from the judgment entered in the circuit court to the supreme court, and we think it is sufficient. The title of the cause is slightly irregular, but contains the names of the plaintiff and party defendant interested in this appeal. It is similar to a slight error in the name of the party, but where the name is sufficiently accurate so that everyone interested would know who was intended.

The motion to dismiss the appeal is denied.

––––––

On the Merits

(20 P. (2d) 384)

*Frank Holmes,* of McMinnville (Otto W. Heider, of Sheridan, on the brief), for appellant.

*B. A. Kliks,* of McMinnville, for respondent.

BAILEY, J.  This action was brought by plaintiff against defendant William Unicume and L. M. Kramer for  an alleged balance due on a promissory note for $2,500 dated November 11, 1929, payable to plaintiff in monthly instalments of not less than $75 and signed by the defendants. The cause was tried to the court and jury, and a judgment was rendered in favor of defendant Unicume. After the entry of the judgment and before notice of appeal by plaintiff, William Unicume died and his brother, Charles Unicume, as administrator of his estate, was substituted as defendant.

The note is in the usual form of instalment note, with the following typewritten after the printed matter and before the signatures: "L. M. Kramer acknowledges a personal liability hereon of $1,000". The defendant Unicume denied the allegations of the complaint except the payment of $1,521.25, and affirmatively pleaded three defenses: (1) fraud; (2) lack of consideration; and (3) duress and coercion. At the trial the defense based on fraud was, by the court, taken from the jury. In the second defense, that of lack of consideration, the defendant Unicume after setting forth a copy of the note alleged that "no consideration existed or exists for the execution of said instrument". When the case was called for trial the defendant Unicume asked and was granted permission

to amend that portion of the answer last above quoted, by changing the word "execution" to "signing". Plaintiff assigns the allowance of this amendment as error. Under section 1-906, Oregon Code 1930, the granting of permission to make this amendment was within the discretion of the trial court. The plaintiff did not request a continuance, and so far as the record shows was not in any way prejudiced by the amendment. Moreover, the trial judge instructed the jury that the defendant Unicume "admitted that the note was executed and delivered". No error was committed by the court in permitting the amendment.

The next assignment of error urged by the appellant is that the facts stated in the third defense are not sufficient to constitute a defense based on duress or coercion. It is contended that the acts relied upon in pleading such a defense are not specifically set forth, and that it is not alleged that defendant Unicume believed or was led to believe that he would be prosecuted if he did not sign the note in question, or that he was promised immunity from prosecution in consideration for signing the note.

The allegations of this answer relating to coercion and duress are thus set out:

"That on November 11, 1929, and at the time of the alleged signing of the instrument attempted to be described in plaintiff's complaint, this defendant Wm. Unicume was in an intoxicated condition, all of which said Otto W. Heider and said Kramer and said plaintiff well knew; the said plaintiff and her said agents took advantage of the condition of this defendant as hereinafter alleged, the same L. M. Kramer as agent for said Heider brought defendant to the office of said Heider for the purposes hereinafter set forth.

"That at the time of the signing of said note, said Otto W. Heider claimed to be acting for and on behalf

of one Ida French and A. H. French, her husband, and while this defendant was thus in an intoxicated condition, the said plaintiff and her agents directly accused this defendant of having committed the crime of adultery by then and there accusing this defendant Wm. Unicume of having sexual intercourse with one Ida French at that time and now and at all times being the wife of A. H. French, in Lincoln county, Oregon, and accusing this defendant of having committed said act some time in the year 1928 and prior thereto. That said plaintiff and her said agents then and there threatened to criminally prosecute this defendant for such alleged crime of adultery, and then and there threatened to arrest, prosecute and imprison this defendant, for such alleged crime of adultery, and for avoiding prosecution on such alleged felony charge, this defendant signed the aforesaid note, and not otherwise.

"That this note, contract or agreement above set forth was without any consideration whatsoever; and no consideration existed or exists for the execution or signing of said agreement. That this defendant signed said instrument wholly at the instigation of said plaintiff, said Otto W. Heider and said Kramer, and by reason of the fear of such criminal prosecution and such imprisonment. That said defendant Kramer is insolvent, and was and is an agent on behalf of said Heider and induced this defendant to sign said note; but this defendant did not know that said Kramer was acting for and on behalf of said plaintiff and said Otto W. Heider".

In the case of *Guinn v. Sumpter Valley Railway Co.*, 63 Or. 368 (127 P. 987), this court, considering a plea of duress, said:

"A comprehensive definition of duress is expressed by Mr. Justice Cooley in Hackley v. Headley, 45 Mich. 569, at page 574 (8 N. W. 511, 512): 'Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circum-

stances which deprive him of the exercise of free will'. See 10 Am. & Eng. Ency. Law (2 Ed.) 321. Duress *per minas* exists when a person is induced to perform an act to avoid a threatened and impending calamity. 10 Amer. & Eng. Ency. Law (2 Ed.) 324. It is said that the fear of imprisonment is sufficient to constitute duress, 'for the law has a special regard for the safety and liberty of a man'. To constitute duress by a threat of imprisonment for a supposed crime, there must be a threat importing an alleged wrongful imprisonment, or a resort to a criminal prosecution for an improper purpose or from a wrongful motive, accompanied by such circumstances as would indicate a prompt or immediate execution of the threat. 9 Cyc. 446. The courts differ on the question as to whether threatened lawful imprisonment constitutes duress. If the threatened imprisonment is unlawful, duress exists. If the threat is of lawful imprisonment but it is unlawfully used to obtain the contract, duress exists. Page, Contracts, § 252''.

In the case of *Port of Nehalem v. Nicholson,* 122 Or. 523 (259 P. 900), this court remarked:

''The ultimate question, after all, to be determined is whether the implied threat made to defendant that Rowe would be sent to the penitentiary if something were not done to take care of the shortage had the effect of depriving him of the free exercise of his will. Did he indorse those notes voluntarily or was his consent to do so obtained through coercion? If, under all the circumstances, he was not in a position to exercise his will in the premises, then there was lacking one of the essential elements of a contract. There was no meeting of the minds.  *  *  *  In the light of the record, we are not prepared, as a matter of law, to say that defendant's indorsement of the notes was not obtained through duress''.

The allegations of the answer hereinbefore quoted are to the effect that Kramer as agent for the plaintiff brought this defendant to the office of Otto W.

Heider, an attorney at Sheridan, Oregon, and while there this defendant was accused of committing the crime of adultery during the year 1928 and prior thereto; that while defendant was in said office plaintiff and her agents threatened him with criminal prosecution for the alleged crime of adultery, "and then and there threatened to arrest, prosecute and imprison him"; that in order to avoid such prosecution "this defendant signed the aforesaid note, and not otherwise"; and that he signed the note "at the instigation of said plaintiff, said Otto W. Heider and said Kramer, and by reason of fear of such criminal prosecution and such imprisonment".

■ No motion was filed to make this answer more definite and certain, nor was the sufficiency thereof tested by demurrer. The plaintiff was fully advised of the acts which Unicume contended amounted to duress and coercion and the answer was sufficient to permit the introduction of evidence pertaining to this defense.

Although plaintiff in her reply did not plead that defendant Unicume had ratified the transaction by making payments aggregating $1,521.25 over a period of some 15 months, nevertheless she contends that since such payments were made and that fact is alleged in defendant's answer she is entitled by reason thereof to avail herself of this defense.

The crime of which defendant was accused was a felony and, as it was alleged to have been committed in 1928, the statute of limitation did not expire until three years thereafter. Defendant Unicume was a bachelor and could have been prosecuted on complaint of A. H. French, the husband of Ida French. The note sued upon was made in November, 1929, and the last payment was in February, 1931.

The question of ratification is concisely treated in 9 R. C. L., page 725, § 15, as follows:

"A contract entered into under duress being, as has been said, generally considered not void but merely voidable, it is, like other voidable contracts, valid until it is avoided by the person entitled to avoid it, and may be ratified by such person after the duress has been removed. Where it is sought to avoid a contract on the ground of duress the person seeking such avoidance should proceed within a reasonable time after the removal of the duress, and if he remain silent for an unreasonable length of time, or if he retain property which he may have acquired under the contract, or otherwise recognize the validity of the contract, he may be held to have elected to waive the duress and ratify the contract. It has been held, however, that to constitute an affirmance, the conduct of the injured party must be such as to indicate an intention to condone the wrong, and a purpose to abide by its consequences, and the influence of the duress must be removed before conduct becomes voluntary. The fact that the act which was done under duress is not repudiated within a space of two years will not amount to a ratification where it appears that at no time during the two years was the duress removed. A resignation of public office, procured by coercion and duress, is voidable, and may be repudiated; and a refusal, immediately subsequent to the resignation, to surrender the office, is a sufficient repudiation".

See, also, *Brown v. Worthington,* 162 Mo. App. 508 (142 S. W. 1082); *Leflore County v. Allen,* 80 Miss. 298 (31 So. 815); *St. Louis, etc., R. Co. v. Gorman,* 79 Kan. 643 (100 P. 647, 28 L. R. A. (N. S.) 637); *Bryant v. Levy,* 52 La. Ann. 1649 (28 So. 191).

■ In the case of *Kohler & Chase Co. v. Savage,* 86 Or. 639 (167 P. 789), regarding the matter of ratification, this court said:

"It will be remembered that the note was executed April 2, 1913. It appears that two payments were in-

dorsed on the note in June of that year amounting to $282, the greater part of which sum of money was furnished by J. F. Savage. It is not disclosed by the bill of exceptions when L. F. Savage's embezzlement of the plaintiff's money began or was terminated. The offense was a felony, against the prosecution of which the statute of limitations ran in three years: section 1377, L. O. L. Evidently the crime was not thus barred April 2, 1913, when the note was executed. Whether such limitation had expired in June of that year when J. F. Savage made partial payments on the note can not be determined from the transcript before us, which does not purport to contain all the testimony given at the trial. It is reasonable to infer that such payments were made before the statute had run, and that the alleged duress continued, if it existed, until the limitation expired''.

It cannot be said as a matter of law that by making payments on the note Unicume ratified the transaction, as it does not appear that any of the payments were made after the duress was removed.

Assignments of error IV and V are based upon the refusal of the court to give plaintiff's requested instructions Nos. 5 and 6, reading as follows:

''You are further instructed that it is not necessary that there be a full consideration of $2,500 shown to support the note as any valuable consideration in any sum is sufficient, $1 would be sufficient consideration for the execution of the note.

''The settlement and release of a valid claim against defendant, Wm. Unicume, would be a sufficient consideration to support the note sued on''.

The court, after instructing the jury that since it was admitted that the note was executed and delivered by the defendant there was a disputable presumption of law that the note was executed and delivered for a

valuable consideration and that the defendant Unicume had the burden of proof to show want of consideration, further said:

"Now, ladies and gentlemen, while we are on this subject of consideration, it is suggested that consideration for the note need not be money only, passing from one to the other, for considerations other than money may be valuable and sufficient to sustain the contract or a note.

"Want of consideration means the absence of price or compensation which may be of value to the maker or of benefit to the payee in the note; it is the want of benefit to the party promising to pay, or a loss to the person to whom the promise is made. It is the absence of value, be it money, property detriment or the want of mutual promises. In other words, if the defendants obtained nothing for the execution and delivery of the note by way of money, price or the equivalent of money or a benefit or a promise of gain or compensation of any character, there would be want of consideration".

■ The court further instructed the jury that the law encourages settlement of legal disputes, "and if French, by his counsel or personally, and the defendant Unicume met and discussed their controversy arising from the supposed wrongs of one against the other, and fairly agreed upon French's claim for damages against Unicume and the settlement finally culminating in the defendant's voluntarily executing and delivering the note in suit as the evidence of the amount agreed upon in liquidation of the amount of damages sustained by French, and that the obligation should be executed and delivered to plaintiff, Callie B. Heider, for that purpose, the note would be supported by a sufficient consideration". The court then went into the question of consideration with more detail, fully covering the subject in its instruction as

given. Inasmuch as the question of consideration was fully covered by the court in its instructions to the jury, no error was committed in refusing to give the foregoing requested instructions.

It is claimed by plaintiff that the court erred in instructing the jury "that the plaintiff ultimately has the burden of proof to prevail in the action". The original bill of exceptions reads as follows:

"Thereafter the court instructed the jury 'that the plaintiff ultimately has the burden of proof to prevail in the action', to which the plaintiff duly excepted as set forth on page 184 of the transcript of testimony hereto annexed".

Thereafter the trial court, after referring to the above quoted matter, amended the original bill of exceptions by certifying:

"But the court does find now that page 184 shows that the counsel for the plaintiff used that language: 'That the plaintiff ultimately has the burden of proof to prevail in the action,' and that the court gave no such instruction, but on the contrary, the court's instruction upon that issue is set forth fully at page 179 of the transcript of the evidence, and reads as follows:

" 'That the party having the affirmative of the issue has the burden of proving that affirmative. The defendant comes into court and says this note is without consideration; that is an affirmative allegation. The burden of establishing that is upon the defendant. He also asserts that the note was obtained by coercion and duress. That also is an affirmative defense and the burden is on the defendant to establish that, but the burden upon the whole case is upon the plaintiff to establish her right to recover upon the note, and this burden is by a preponderance or outweighing of the testimony' ".

We are not called upon to decide questions not before the lower court, and since the appellant does not contend that the instruction as given by the court was erroneous, there is no need to consider further this assignment of error.

At the close of the trial plaintiff moved for a directed verdict in her favor for the balance alleged due on the note, together with $125 attorney's fees, assigning as reason for the motion that there was no evidence (1) of fraud, (2) of failure of consideration, or (3) of duress and coercion; that by making payments on the note the defendant Unicume had ratified the transaction; and that defendant's answer did not state facts sufficient to constitute a defense of duress and coercion. The question of fraud was withdrawn by the court from the jury and there was ample evidence of duress and lack of consideration to warrant submitting the case to the jury. No good purpose would be served by stating what the evidence tended to prove. The other matters referred to in this motion have already been disposed of and need not be further considered.

As we find no reversible error, the judgment of the circuit court is affirmed.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.